*In the matter of* HELEN MILLER, *upon habeas corpus, and eleven other cases.*

### October Special Term, 1865.

Exposition of the law in relation to vagrancy, disorderly persons, and disorderly conduct in the city of New York; the correct course of procedure under the various statutes, in summary convictions and commitments for such offenses before police justices pointed out, and the nature and extent of the power that may be exercised in reviewing such cases upon writs of *habeas corpus* and *certiorari*.

The offenses which constitute *disorderly conduct* under the acts of 1833, ch. 11, and of 1860, chap. 508, are different from the offenses which will constitute a " *disorderly person* " under the act of 1833, and the Revised Statutes. In common parlance, one who is guilty of disorderly conduct may be regarded as a disorderly person, but these terms " disorderly *person* " and " disorderly *conduct*" are used in the statutes as distinguishing distinct and different offenses.

There are, under the statutes regulating these summary convictions before a magistrate without a jury, three classes of offenders. 1. Vagrants. 2. Disorderly persons. 3. Persons guilty of disorderly conduct; each of which is distinguishable from the other, and in each the course of procedure is different.

Though the statute of 1833 is silent as to what the magistrate is to do after a conviction for disorderly conduct, if the offender fail to give security for his good behavior, it is manifestly implied, that he is to be committed until he gives it, or until the expiration of the period for which he was required to give it.*

The act of 1859, chap. 491, authorizing police justices to impose a fine of ten dollars, in cases of disorderly conduct, was not intended to, and does not abrogate the previous provision, in empowering them to require security for good behavior in such cases. It is in the discretion of the justice either to impose the fine or to require security.

---

* Disorderly conduct is improper driving, using threatening, abusive, or insulting behavior, suffering a ferocious or vicious dog to go unmuzzled, loitering in public thoroughfares for the purpose of prostitution, or any act, which, in the opinion of the magistrate committing, tends to a breach of the peace.

In the matter of Miller.

The twentieth section of the act of 1860, chap. 508, which declares that certain acts shall constitute disorderly conduct, was not intended to limit the offense to such acts. The only effect of it is, that it leaves nothing to the discretion or opinion of the magistrate where such acts are proved, but makes it his duty to commit.

The proceedings upon a conviction for disorderly conduct were designed to be of a more summary nature than upon the conviction of vagrants or disorderly persons. In the latter cases, a record of the conviction must be filed, but the filing of a record is not necessary in committing for disorderly conduct.

It is not essential to the validity of a commitment for disorderly conduct, that it should set forth the acts which, in the opinion of the magistrate, tend to a breach of the peace. Where the commitment declares that the prisoner was charged before the magistrate, on the oath of witness, who is named, with such disorderly conduct, as in the opinion of the magistrate, tends to a breach of the peace, and that he was required to give security for his good behavior, and failed to give it, it is sufficient.

Where the criminal process upon which the party is imprisoned is returned in answer to a writ of *habeas corpus*, all that the officer granting the writ can do is to examine the process, to see if the officer or court whence it emanated had jurisdiction of the subject matter, and if that appears upon the face of the process, the party must be remanded. If the officer making the commitment acted upon insufficient evidence, or without any evidence at all, the remedy is by a writ of *certiorari* to the Court of Sessions, under the act of 1859, chap. 339.

Where the order for the transfer of the offender from the City Prison to the Work-House, purports upon its face to be made by the direction of the Board of Commissioners of Public Charities, and is authenticated by the signature of one of the commissioners, it is sufficient. Otherwise, when it is signed by one of the commissioners only, and there is nothing upon its face to denote that it was done by order of the Board.

Where a power is given to a Board of Commissioners by statute, the official act of one of the members will not suffice, but it must appear that the Board acted in the premises.

A commitment for disorderly conduct until the offender finds security in a certain sum for his good behavior is bad, as it is equivalent to perpetual imprisonment, if he should be unable to find security. It must be for some fixed term or period, and must not exceed twelve months.

The provision in the act of 1864, chap. 586, declaring that no person committed to the City Prison or Work-House, for drunkenness or disorderly conduct, should be discharged, except upon reversal of judgment upon appeal, or review by a court of superior jurisdiction to the magistrate making the committment, does not preclude a judge upon *habeas corpus* from enquiring whether the magistrate making the commitment acted in a mat-

---

In the matter of Miller.

---

ter of which he had jurisdiction, and discharging the party if there was a want of jurisdiction.

The writ of *habeas corpus* stands upon the same footing as the writs of *quo warranto*, *mandamus*, *certiorari* and *prohibition*, and as in the case of these writs, the proceedings under it are appellate in their character. It issues under the seal of the Supreme Court. The officer acting under it is clothed by statute with the same power as the court; it brings up the body of the prisoner with the cause of his commitment, and the proceeding under it is a review by a court having superior jurisdiction to the magistrate making the commitment.

All which is essential to constitute a court exist in the proceeding which is had before a judge upon a writ of *habeas corpus ;* the *actor*, or plaintiff, the *reus*, or defendant, and the *judex*, or judicial power which is to examine into the fact, the law arising upon it, and to apply the remedy ; the officer acting not ministerially but judicially with authority by statute to imprison.

Where an authority is created by statute, with power to fine or imprison, the officer, person or body invested with such authority is, for that purpose, deemed a court.

Eleven persons were brought up upon writs of *habeas corpus* and *certiorari*, all of whom had been committed by police justices for disorderly conduct, and had been transferred from the City Prison to the Work-House on Blackwell's Island. Their discharge was moved for for various alleged irregularities, both in the proof of commitment and in the orders for their transfer, all of which appear in the opinion delivered.

*W. F. Howe*, for the petitioners.

*A. Oakey Hall*, District Attorney, for the people.

DALY, F. J.—The parties in the above cases have been brought before me upon writs of *habeas corpus*, and the authority upon which they are held upon writs of *certiorari*. They have been severally committed by police justices for disorderly conduct, upon failing to give security for their good behavior, to the City Prison, and from thence have been transferred to the Work-house upon Blackwell's Island. Their discharge is sought upon the ground that the original commitments, in every case, are void, and upon the further ground, in several cases, that the transfers to the Work-house were not in the mode prescribed by law.

In the matter of Miller.

As many laws have been passed in respect to those summary convictions, and as a great deal of uncertainty prevails as to the correct mode of procedure under them, it will be necessary for me to review the various statutory enactments, that I may pass intelligibly upon the questions raised.

In that portion of the Revised Statutes relating to the internal police of the State (1 Rev. Stat., chap. 20, Part. I.), an enumeration is made of two classes of offenders : 1st. Vagrants. 2d. Disorderly persons. Under the head of Vagrants are embraced : 1st. Idle persons, living without employment, and having no visible means of support ; 2d. Beggars ; 3d. Persons wandering abroad and sleeping in the open air, or other specified places ; and Disorderly Persons are substantially designated as : 1st. Those who abandon their wives and families ; 2d. Prostitutes ; 3d. Fortune-tellers ; 4th. Mountebanks ; 5th. Common showmen ; 6th. Gamblers ; and 7th. Keepers of bawdy houses.

The first class, or Vagrants, upon conviction before a magistrate, may be committed to the Poor-house for six months, or, if improper persons to be sent there, may be sent to the County Jail for sixty days. The second class, disorderly persons, upon conviction, may be required by the magistrate to give security for their good behavior for a year, and, failing to do so, may be committed to the common jail until they find such security, or are discharged by law. Upon the conviction of a vagrant, a record of the conviction must be made up by the magistrate, and filed in the County Clerk's office ; and on the commitment of a disorderly person, upon failing to give security, a record must also be made up in the same way and filed.

In 1833, an Act was passed for the regulation of the criminal courts of this city (*Laws of New York*, 1833, p. 9), which, among other things, embraced an enumeration of the class known as vagrants, which is more extensive than that contained in the Revised Statutes, and an addition was made to the class known as disorderly persons. This Act, which was limited to the City of New York, authorizes the Mayor, Recorder, or any police justice of the city, to commit vagrants, who are not notorious offenders, to the Alms-house for six months at hard labor, or if not fit persons to be sent there, then to the Penitentiary for the same period. It provided for the commitment

of disorderly persons in the same manner as in the Revised Statutes, and in both cases required the filing of a record of the conviction.

This Act made provision also for what is denominated in the Act disorderly conduct, which by one section (§ 5) is the riding or driving of a horse through the public streets at a greater rate of speed than five miles an hour; and in another section (§ 8) is declared to be such disorderly conduct as, in the opinion of the magistrate, tends to a breach of the peace. For the offense of improper driving, the magistrate is authorized to impose a fine of ten dollars, and if it is not paid, to commit the offender to the City Prison until it is paid, but not for a longer period than ten days; and for the offence of disorderly conduct tending to a breach of the peace, he is empowered to require the offender to give security, for his or her good behavior, for a period not exceeding twelve months. The statute is silent as to what the magistrate is to do, if the security is not given; but though not expressed, the intention is manifestly implied that the offender is to be committed until he gives it, or until the expiration of the period for which he was required to give it; and such, since the passage of the Act, has been the course of procedure under it.

The disorderly conduct here referred to is distinguishable and different from those acts which will constitute a disorderly person or a vagrant, as defined in this statute and by the Revised Statutes. In common parlance, a person guilty of disorderly conduct may be said to be a disorderly person; but we have here to do with statutes that have carefully defined what is to be understood by the term "a disorderly person," and which have distinguished the offense of " disorderly conduct" as simply the offense of improper driving, or such conduct as, in the opinion of the magistrate, tends to a breach of the peace; and it has been the failure to observe this distinction and the confounding of one term with the other that have led to a great deal of the practical difficulty attending the administration of this branch of our criminal law. The term disorderly conduct, as distinguishing an offense different from that which will constitute a disorderly person, was used in our statutes long before the passage of this local Act of 1833, or the adoption of the Revised Statutes (Laws of 1816, pp. 171, 172, § II.; 1 Rev.

In the matter of Miller.

Laws of 1813, p. 114; 2 Id., p. 354); and in addition to what has been above pointed out there are other features which serve to distinguish the one from the other. The Act of 1833 requires a record to be filed upon the commitment of a disorderly person who fails to give the requisite security (§ 7); but it makes no such provision in respect to disorderly conduct (§ 8). In the case of disorderly conduct, moreover, the magistrate may require security for the offender's good behavior, for any period he may think proper to designate, not exceeding twelve months. He may take it for a week, or for a month, or for any time within the statutory limit; whereas, in the case of a disorderly person, he must take it for a year, and not for any lesser period. There are, therefore, under the statutes regulating these summary convictions before a magistrate without a jury three classes: 1st. Vagrants; 2d. Disorderly persons; and 3d. Persons guilty of disorderly conduct; each of which is distinguishable from the other, and in each the course of procedure is different. All the cases now before me are commitments for disorderly conduct; and, in passing upon the questions that have been raised as to the validity of these commitments, I shall examine only such statutory provisions as in my judgment relate exclusively to this class of convictions.

The first objection is, that no record has been filed. It is not necessary. The fact that the statute of 1833 makes provision for the filing of a record upon the commitment of a vagrant or of a disorderly person, and makes no such provision in relation to convictions for disorderly conduct, must be taken as an expression of the legislative intention, that this class of convictions were intended to be of a more summary character, in which the formality of a record was to be dispensed with. They have been uniformly so regarded; and during the thirty-two years that had elapsed since the passage of the Act of 1833 it has never been the practice to make up and file records of conviction in such cases.

In 1859, an Act was passed in relation to police justices in this city (Laws of 1859, p. 1129), by which it was provided (§ 5) that in all cases of arrest for intoxication or disorderly conduct, the police justice, in addition to holding the party to bail for good behavior, should have power to impose a fine to the extent of ten dollars, or to commit to the City Prison for a

period not exceeding ten days, each day of imprisonment to be taken as a liquidation of one dollar of the fine. It is insisted that since the passage of this Act there can be no commitment for a greater period than ten days—that all the magistrate can do is to require the party to give security for good behavior, and if it is not given, to impose a fine of ten dollars or less, and if that is not paid commit to the City Prison for ten days or less. But this by the express word of the statute is a power given in addition to that which authorized the magistrate to require security for the party's good behavior for a period not exceeding twelve months; for the use of the words "in addition" is a plain indication of the intention that the previous power was to continue. As I interpret the statute, therefore, the justice may, as he could do before, require the party to give security for any period not exceeding twelve months, and commit him if he fails to give it—or he may impose a fine to the extent of ten dollars, and, if it is not paid, commit the party for a number of days corresponding with the amount of the fine. As a large number of those who are arrested for disorderly conduct are composed of a class generally unable to give security, the discretion is certainly a very large one which allows a magistrate to commit them to prison for twelve months, when for much graver offenses the Court of Special Sessions can sentence an offender for no longer a period than six months; and this becomes the more serious when it is considered that the right to commit for disorderly conduct is not expressly given, but merely implied. In the commitment of vagrants or disorderly persons, moreover, the magistrate is required to distinguish between those who should be sent to the Alms-house at hard labor, at present known as the Work-house, and those who should be sent to the Penitentiary. In the commitment of disorderly persons, not only is the filing of a record of conviction directed, but the keeper of the jail is required (1 Rev. Stat., 639) to return to the next Court of General Sessions a list of all persons so committed and in his custody, with a statement of their offenses, the names of the justices committing them, and the term during which they have been in prison; and the Court is directed to inquire into the circumstances, to hear any proof that may be offered, to examine the record of conviction, and in its discretion may either discharge the

In the matter of Miller.

offender or order him to to be left in jail for a period of six months. But no such supervisory power exists in commitments for disorderly conduct, nor until 1857 was there any means by which a person so committed could review the decision of the justice, or be discharged from the commitment, except by giving security, which, as a general rule, it is not in the power of this class of persons to obtain. The power which the magistrate and the Commissioners of Public Charities and Correction have to discharge from the Work-house or Penitentiary applies only to the case of vagrant and disorderly persons, and not to those convicted merely of disorderly conduct (*Laws of* 1853, *p.* 353; *Laws of* 1855, *p.* 451 ; *Laws of* 1860, *p.* 1003, § 5). The strange anomaly is therefore presented, that the former, who are guilty of much graver offenses, have their conviction reviewed at the next term of the Court of General Sessions; that they cannot, in any event, be imprisoned for a longer period than six months, and may be discharged by the Court of Sessions, or at any time during their imprisonment by an order of two of the Commissioners of Public Charities and Correction, with the approval of the magistrate that committed them; while the latter, whose offenses are of a lighter degree, may be imprisoned for twelve months, and cannot be discharged unless they give security. An Act was passed in 1857 (*Laws of* 1857, vol. 2, 708), amended in 1859 (*Laws of* 1859, p. 794), by which a writ of *certiorari* to the Court of Sessions to review a conviction in a Police Court may be allowed by a Justice of the Supreme Court ; but until the passage of this Act there was no means by which an error, mistake, or injustice, in a commitment for disorderly conduct, could be interfered with by any officer or tribunal, and the committing magistrate was clothed with a power which, whether rightly or wrongly exercised, was beyond review or remedy. Our statutes in this particular are in a state certainly calling for amendment ; and it is to be hoped that the consideration of this subject will be called to the attention of the Legislature.

By an Act passed in 1860 in relation to the police and courts in this city (*Laws of* 1860, p. 1007), it was provided (§ 20) that every person in this city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace,

In the matter of Miller.

who shall in any thoroughfare or public place in this city commit any of the following offenses :

1. Every person who shall suffer to be at large any unmuzzled, ferocious or vicious dog.

2. Every common prostitute or night-walker, loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by.

3. Every person who shall use any threatening, abusive or insulting behavior, with an intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned.

It is claimed that this is a legislative exposition of what is meant by disorderly conduct; that it defines and limits the nature of the offense, and that every commitment must show upon its face that the offender was found guilty of some one of the acts above specified. But this statute cannot be taken as repealing those parts of the Act of 1833 providing for the punishment of disorderly conduct. It declares that the cases specified shall constitute disorderly conduct ; but neither in its terms nor by implication does it limit it to such cases. It is not in conflict nor in any way inconsistent with the pre-existing Act of 1833, by the provisions of which any conduct is disorderly which in the opinion to the magistrate tends to a breach of the peace. In respect to the acts or offenses particularized, it leaves nothing to the discretion or opinion of the magistrate, if the fact is proved, but does not go beyond that. It is not desirable that it should, for there are many acts which tend to produce a breach of the peace that it would be difficult to bring within any statutory positive definition. The discretion with which the magistrate is clothed by the Act of 1833, to require security for good behavior when the conduct of the offender has been such as in the opinion of the magistrate has a tendency to lead to a breach of the peace, is a salutary one. It is indispensable in a great metropolis like this, to secure the preservation of good order, and it is not to be assumed that the Legislature meant to take away what was so essential to its preservation, unless that intention is unmistakably expressed.

The next objection is, that none of the commitments, except in one case, specify any act that was done, tending to a breach of the peace. It is insisted that the commitment should

In the matter of Miller.

set forth either that the party was convicted of some one of the acts specified in the amendatory statute of 1859, or some act or acts should be stated which, in the opinion of the magistrate, had a tendency to produce a breach of the peace.

This objection is not tenable.   Where the criminal process under which the party is imprisoned is returned, as in these cases, in answer to the writ of *habeas corpus*, all that the officer granting the writ can do is, to examine the process to see if the officer or court whence it emanated had jurisdiction of the subject matter, and if that appears upon the face of the process, the prisoner must be remanded to the custody from which he was taken.   The officer making these commitments may have acted upon insufficient evidence or without any evidence at all, but that is not a matter which can be inquired into upon *habeas corpus* (*The People* v. *Cassels*, 5 Hill, 168; *Bennac* v. *The People*, 4 Barb., 31; *The People* v. *McLeod*, 25 Wend., 483; 1 Hill, 377; *In the matter of Clark*, 9 Wend., 212; *In the matter of Prime*, 1 Barb., S. C., 296; *Case of the sheriff of Middlesex*, 11 Ad. & Ellis, 273). "A warrant," says Justice WILLARD, in *Bennac* v. *The People*, *supra*, "issued upon the conviction of a party as a disorderly person is not required to recite any fact but the conviction;" and in the learned note of the late Mr. HILL, upon the nature of the writ of *habeas corpus* (3 *Hill*, Appendix, 658, note 30), he says, after a citation of the authorities: "Neither the English nor our own statutes were intended to authorize an inquiry into the validity of writ, warrant, or other process, futher than to ascertain if they will protect the party suing them out or the officer executing them. * * * If the object is to impeach it as irregular, or as founded upon an erroneous or irregular judgment, decree or conviction, you can no more inquire of such things collaterally by *habeas corpus* than you can by an action or indictment * * * Error, irregularity, or want of form is no objection * * * If it is sufficient to protect the party or the officer, the imprisonment is lawful, and can be relieved against only by a writ of error, *certiorari*, &c."

The commitments in these cases declare that each prisoner was charged before the magistrate, upon the oath of a witness who is named, with such disorderly conduct as, in the opinion of the magistrate, tends to a breach of the peace; that the pris-

oner was required to give security for his good behavior; that he failed to do so, and closes with the order that he be committed to the City Prison for a period named, which in no one of the cases is greater than six months, or until he find security. This is amply sufficient to show that the police justice in each case acted in a matter of which he had jurisdiction, and that he had authority to do what he did. If he acted erroneously, or upon insufficient evidence, the prisoner's remedy is to procure the allowance of a writ of *certiorari* to the Court of Sessions to review the justice's judgment, under the amendatory Act of 1859 (Laws of 1859, p 794).

The next objection is to the mode by which the prisoners were transferred from the City Prison to the Work-house on Blackwell's Island. The Act abolishing the Alms-house and creating the Department of Public Charities and Correction (Laws of 1860, p. 1026) authorizes the Board of Commissioners to transfer and commit from the City Prison to the Work-house vagrants, disorderly persons and persons committed for crime. There might be some doubt whether persons committed to the City Prison for disorderly conduct would be included in either of the classes above specified; but that doubt is set at rest by the passage of the Act of 1864 (Laws of 1864, p. 1342), which is not only a legislative recognition that such was the intention, but an Act designating the time at which the transfers may be made in such cases. This disposes of the first objection made upon this ground. In some of the cases before me the order for the transfer is signed merely by one of the Commissioners, and there is nothing upon the face of the paper to denote that it was done by order of the Board. This is not sufficient. The power is given by the statute to the Board and not to any one of the Commissioners; and to warrant the transfer, it must at least appear that the Board acted in the premises. In the other cases, the order for the transfer purports upon its face to be made by the direction of the Board, and is authenticated by the signature of one of the Commissioners. This is, in my judgment, sufficient in answer to a writ of *habeas corpus*.

In some cases, the party is committed until he finds security in a certain sum for his good behavior. Such a commitment is void, as the Justice can require the party only to give security for some period, not exceeding twelve months, and under a

oner was required to give security for his good behavior; that he failed to do so, and closes with the order that he be committed to the City Prison for a period named, which in no one of the cases is greater than six months, or until he find security. This is amply sufficient to show that the police justice in each case acted in a matter of which he had jurisdiction, and that he had authority to do what he did. If he acted erroneously, or upon insufficient evidence, the prisoner's remedy is to procure the allowance of a writ of *certiorari* to the Court of Sessions to review the justice's judgment, under the amendatory Act of 1859 (Laws of 1859, p 794).

The next objection is to the mode by which the prisoners were transferred from the City Prison to the Work-house on Blackwell's Island. The Act abolishing the Alms-house and creating the Department of Public Charities and Correction (Laws of 1860, p. 1026) authorizes the Board of Commissioners to transfer and commit from the City Prison to the Work-house vagrants, disorderly pers    and persons committed for cri... . There might be some d    whether persons committed to the City Prison for disor    duct would be included in either of the classes above sp.    , but that doubt is set at rest by the passage of the Act of 1864 (Laws of 1864, p. 1342), which is not only a legislative recognition that such was the intention, but an Act designating the time at which the transfers may be made in such cases. This disposes of the first objection made upon this ground. In some of the cases before me the order for the transfer is signed merely by one of the Commissioners, and there is nothing upon the face of the paper to denote that it was done by order of the Board. This is not sufficient. The power is given by the statute to the Board and not to any one of the Commissioners; and to warrant the transfer, it must at least appear that the Board acted in the premises. In the other cases, the order for the transfer purports upon its face to be made by the direction of the Board, and is authenticated by the signature of one of the Commissioners. This is, in my judgment, sufficient in answer to a writ of *habeas corpus*.

In some cases, the party is committed until he find security in a certain sum for his good behavior. Such a commit void, as the Justice can require the party only to give security for some period, not exceeding twelve months, and under

In the matter of Miller.

commitment like this, the party, if he could not find security, would have to be detained beyond twelve months. It is, in such an event, equivalent to perpetual imprisonment. In other cases, the commitments are defective, as they fix no positive term of imprisonment, other than that it is not to exceed six months. They do not declare for what period the party was required to give security for his good behavior, but simply direct that he shall be imprisoned for a period not exceeding six months.

The last objection is that a judge upon *habeas corpus* has no power to discharge a commitment for disorderly conduct, in any case or for any cause. By an Act passed in 1864 (Laws of 1864, 1342), it is declared that no person committed to the City Prison or the Work-house, for drunkenness or disorderly conduct, shall be released or discharged from confinement before the expiration of the term for which he or she shall be committed, except upon reversal of judgment upon appeal or review by a court of superior jurisdiction to the magistrate making the commitment, without a written order directing such discharge made, and signed by the committing magistrate and o- e Commisioners of Public Charities and Correction. t to be assumed that the Legislature intended to take away the privilege of the writ of *habeas corpus*, where the citizen is deprived of his liberty by an officer acting totally without jurisdiction, unless it is clear that such was the intention, and I do not think that that was the design of the Act. A restrictive Act of an analogous character was passed in 1855 (*Davies' Laws relative of the City of New York*, p. 1194), forbidding the discharge of vagrants from the Penitentiary or Work-house, unless upon a writ of *habeas corpus* or *certiorari*, except by an order of the Governors of the Alms-house, and by an Act passed in 1860 (*Valentine's Laws relating to the City of New York*, p. 606), it was provided that disorderly persons should not be discharged without the written approval of the magistrate committing them, except by a court of competent jurisdiction, or other legal proceedings for that purpose. The Act of 1864 is not as carefully worded as these two Acts in relation to vagrant and disorderly persons, but I think the intention was the same, and that the words "or review by a Court of superior jurisdiction to the magistrate making the

commitment" may be held to embrace the extent to which a Judge upon *habeas corpus* and *certiorari* may review the proceedings of magistrates upon criminal process, that is, to the extent of ascertaining whether the magistrate acted in a matter of which he had jurisdiction. The writ of *habeas corpus* was from its inception a prerogative writ. At common law it stood upon the same footing as other writs of that character, such as a *quo warranto*, *mandamus*, *certiorari*, prohibition, &c., and was dealt with upon the like general grounds and principles (3 Bl. Com., 131–2; *Rex* v. *Cowle*, 2 Burr., 855–6). The proceedings under it, as in all prerogative writs, were regarded as appellate in their character (Ingersoll on Habeas Corpus, 56; *Yates' Case*, 4 Johns. R., 317; Bacon's Abm., *Habeas Corpus*, A); and it is said by Chief Justice MARSHALL, in *Ex parte Tobias Watkins* (3 Pet. R., 202) to be "in the nature of a writ of error which brings up the body of the prisoner with the cause of his commitment." In this State, where the writ issues in behalf of a person [dert]ained of his liberty, the proceedings are regulated by [the statute], by which the provisions of the common law have b[een] [aug]ated, except so far as they may be necessary to carry out the provisions of the statute (2 R. S., 573, § 73). By the statute the writ issues under the seal of the Supreme Court, and whether allowed and heard by the Court or by an officer authorized to grant it, the proceedings are in either case the same, and the judge or officer before whom it is returnable is clothed with all the power given by the statue to the Court (3 Hill, Appendix, Note 5). He may therefore be said to act, within the limits prescribed by the statute, as a court. There are in a court, according to Blackstone, three constituent parts, *actor*, *reus* and *judex*: the *actor*, or plaintiff, who complains of an injury done; the *reus* or defendant, who is called upon to make satisfaction for it; and the *judex*, or judicial power, which is to examine the truth of the fact, the law arising upon it, and, if an injury has been done, to apply the remedy (3 Bl. Com., 25). All these exist in the proceeding which is had before a judge upon a writ of *habeas corpus*. He acts not ministerially but judicially (3 Hill, Appendix, Note). The statute gives him the right to imprison (§ 54), and wh[ere] an authority is created by statute with power to fine or imprison, the officer, person or body, invested with such au[thority]

is, for that purpose, deemed a court (*Denbawd's Case*, 11 Coke, 103 ; *Grenville* v. *The College of Physicians*, 12 Mod., 388 ; *Groenvelt* v. *Burwell*, 1 Comyns' R., 76 ; Id., 1 Salk., 200 ; 3 Bl. Com., 24 ; *Briggs* v. *Mackellar*, 2 Abbott's Pr. R., 61).

The power, therefore, which a judge exercises upon *habeas corpus* to inquire into the cause of the detention where a party is deprived of his liberty is, in the language of the statute of 1864, as applied to cases like this, a review by a court of superior jurisdiction to the magistrate making the commitment.

This disposes of all the questions before me ; and the parties brought up upon the several writs will be remanded or discharged, according as the decision affects their several cases.