FELKO SMIDT, by GERHARD SMIDT, Guardian, Appellant,
v. JOHN BENENGA, and HARMKE BENENGA,
Appellees.

*Habeas corpus:* CUSTODY OF MINORS. Generally the parents are entitled to the care and control of their minor children, but they may by conduct or agreement deprive themselves of this natural right and confer it upon others; and where there is doubt as to the abstract right to the custody of a child the courts will be governed by the best interests of the child. Evidence in *habeas corpus* proceedings by the father held to show that the best interests of the minor demanded that he be left with relatives with whom he had resided from infancy.

**Same:** COURT FINDING: EFFECT. The finding of the trial court in *habeas corpus* proceedings for the custody of a minor, involving to a large degree matters of discretion, has the force and effect of the verdict of a jury.

**Guardianship.** Letters of guardianship of the person of a minor must be issued in the county of the minor's rightful domicile.

**Same:** ADJUDICATION. Legal guardianship of the person of a minor is probably not an adjudication of the right to the custody of a child in subsequent *habeas corpus* proceedings.

*Appeal from Butler District Court.*—HON. J. F. CLYDE,
Judge.

TUESDAY, NOVEMBER 24, 1908.

THIS is a *habeas corpus* proceeding brought to secure to Gerhard Smidt the custody and control of his son Felko, a minor eleven years of age. The trial court decided that the child should remain with defendants, and the father appeals.—*Affirmed.*

*Senneff & Bliss,* for appellant.

*J. H. Scales* and *J. S. Roberts,* for appellees.

DEEMER, J.—Felko Smidt is a boy eleven years of age. His mother died as a result of childbirth, the boy being then about one month old. A Mrs. Kramer was the grandmother of Felko, and, upon the death of the mother, this grandmother, with her daughter, Mrs. Benenga, by agreement with the father undertook to bring up the boy. The grandmother was then about sixty years of age and somewhat crippled, but she was a woman of some means, and then and thereafter lived with the defendants, as did the boy when taken by the grandmother. This grandmother and the defendants have treated the boy kindly, attended to his education, supplied his wants, and defendants were, in so far as the boy knew while he was growing up, his parents. The grandmother died some weeks before this action was commenced, and shortly after her death the father began his efforts to get possession of the child. He admits that he consented to the grandmother taking the child, but contends that he never agreed that defendants should have him, and insists that, upon the death of the grandmother, he, the natural father, became entitled to the care, custody and control of his offspring. On the other hand, defendants contend that the father gave them, with the grandmother, the care, custody and control of the child; that they gave him support and suste-

nance during all of the time that they had him; that they have supplied him with clothing, gave him an education, and otherwise treated him as their own from the time he came into their possession as a mere infant; and that they should not now be deprived of his custody and control. When the boy's mother died, Smidt lived in Butler County, and there were three children born unto him by his first wife. After the death of the mother, Smidt's sister kept house for him for about a year when he, Smidt, married a Mrs. Mesury, now Mrs. Smidt, by whom he has had five children. Mrs. Mesury also had one child when she married Smidt, so that there are three sets of children in the Smidt family—the Mesury boy, the five children of the present marriage, and a brother and sister of Felko Smidt. When the boy's mother died, Gerhard Smidt lived in Butler County; but soon after his second marriage he moved to Hancock County, where he has since resided. He is now able and willing to take care of his boy, and his present wife also desires to have him in the family. Defendants have given the boy proper care, and are willing to do so in the future. They, too, have some children of their own, but they have never made any discrimination in their favor.

These cases are always trying ones to all concerned, and, no matter how decided, the result must be a keen disappointment to one side or the other. Generally speaking, the natural parents are entitled to the care, custody and control of their minor children; but they may by agreement or conduct deprive themselves of this natural right and confer it upon others. And when the scales are equally balanced, or the court is in doubt about the abstract right of control, the interests of the child are paramount and will prevail. We do not wish to in any way throw doubt upon the paramount right of a father to the custody of his offspring; but where he has neglected to assert that right

1. HABEAS CORPUS: custody of minors.

for many years, and the child knows him not, but has formed other attachments which are almost as sacred as the natural ones, and in effect quite as strong, courts are reluctant to make any change, particularly where, as here, these attachments were formed with the consent of the natural parent. There is a dispute in the testimony as to the nature of the original agreement with reference to the care and custody of the child. The father says that the boy was to be cared for by his grandmother during her life and not by the defendants, and that upon the grandmother's death he should be turned over to his father. This is denied by defendants; and they claim that the boy was left with them, the grandmother being crippled by rheumatism, to be "brought up to manhood." There can be no doubt under the testimony that defendants have taken care of the boy and have treated him as their own child during his most dependent and impressionable years. Naturally, a strong affection has grown up between them, and the boy regards the defendants as his natural parents. No complaint is made of defendants' treatment of the boy, and they are amply able to care for him in the future. The boy is not in very good health. During the time the boy was with defendants the father never furnished him anything, and, although seeing him frequently before his removal to Hancock County, his visits since that time have been infrequent, and the boy scarcely knows his own father. The boy has taken the name of Benenga, and, while he knows that Smidt is his father, he does not know what that term implies. To his comprehension defendants are his parents. The trial court made a finding of facts which has such support in the evidence that we adopt it as the basis for our conclusion. It reads as follows:

There is no evidence that the boy was ever in the father's home after the second marriage, and it is affirmatively shown that he has not been in that home since the father removed to Hancock County, nor has the father

paid for the support and .education of his son.  And no excuse is offered by the father, or appears in the evidence, for his failure in these respects.  Because others have done for this motherless child the duties ordinarily performed by all good parents does not excuse the father from his neglect.  Now a condition has developed in which the son has no love for his father, and the reason is obvious.  If the father loves his son as a good father should, he has long failed to manifest such love.  The fact that a present interest is taken in the son when he has reached an age at which boys in his station of life began to be helpful in chores and work, and when he has come into property from his grandmother's estate, can not atone for the long years of indifference and neglect during the child's helplessness and need.  On the other hand, the evidence conclusively shows that Mrs. Benenga has been a kind and loving mother to this motherless boy during more than ten years from babyhood, and that as a result of such care and intimacy there has grown up a deep and strong affection on the part of each for the other.  He is now a part of the Benenga home as much as though he had been born into it.  He is a stranger to his father's home, due entirely to the acts and conduct of the father.  In character and reputation the Benengas are fully equal to the father and stepmother.  There is no question as to their ability to properly care for and educate the lad.  They have proven their unselfish devotion to the boy by long years of loving care when such care was needed.  From all the evidence in the case I am firmly and abidingly satisfied that the boy's welfare and happiness will be best promoted by permitting him to remain in the defendants' home, where he desires to remain, and that an order transferring him to his father's house might result in serious injury to him, and would cause great sorrow to him and to Mrs. Benenga.

Such being the record, the final determination of the controversy is clearly indicated.  The finding of the trial court in such cases has the force and effect of the verdict of a jury, and will not be disturbed if there be evidence in its support.  *Dunkin v. Seifert,* 123 Iowa, 64, and cases cited.  Moreover, it is a case where so much depends upon the appear-

2. SAME: court finding: effect.

ance and demeanor of the parties and the witnesses, so much upon the discretion of the trial court, and so much upon the welfare of the child as disclosed by his appearance and affections, that we are not justified ordinarily in disturbing the finding of the trial court. Our conclusions on the whole case find ample support in *Bonnett v. Bonnett,* 61 Iowa, 202; *McDonald v. Stitt,* 118 Iowa, 199. The cases relied upon by appellant are not in point, and, in view of those cited in support of this opinion, it is needless to review or to point out the distinctions which exist between them.

It appears that in July of the year 1907 the clerk of the Hancock County district court, upon petition of Gerhard Smidt, issued letters of guardianship of the person and property of Felko Smidt, and that in 3. GUARDIANSHIP. September of the same year the clerk of the Butler County district court issued letters to defendant, John Benenga. If either of those appointments should be regarded as controlling, the latter must obtain. The Hancock County court had no jurisdiction of the minor, as his domicile was at the time of the issuance of these letters in Butler County. That was the domicile of his origin, and, under the facts disclosed by the record before us, this domicile was never changed to Hancock County. It is conceded that defendants' possession of the boy was rightful at the time letters of guardianship were issued to the natural father, and they and they alone had power to change his domicile. *In re Vance,* 92 Cal. 195 (28 Pac. 229); *In re Benton,* 92 Iowa, 205.

It is doubtful if the issuance of letters in any event should be regarded as an adjudication as to the right of custody, even where the guardianship is of the person. 4. SAME: adjudication. If there be anything in this point, it is favorable to defendants, for they have the only letters issued by a court with jurisdiction. But we do not regard the issuance of such letters as an adjudica-

tion. See *Ramsay v. Ramsay,* 20 Wis. 507; *Brooke v. Logan,* 112 Ind. 183 (13 N. E. 669, 2 Am. St. Rep. 177); *Wilcox v. Wilcox,* 14 N. Y. 575.

No error appears, and the judgment must be, and it is, *affirmed.*