OF

## CASES AT LAW AND IN EQUITY

DETERMINED BY THE

# SUPREME COURT

OF THE

## STATE OF IOWA

AT

## DES MOINES

JUNE AND SEPTEMBER TERMS, 1922.

---

STATE OF IOWA ex rel. JOSEPH NUNN et al., Appellee, v. WILMA EMMA KOONS, Appellee; WILLIAM KOONS, Petitioner, Appellant.

GUARDIAN AND WARD: Proper Care—Evidence. On the issue 1 whether defendants, as guardians of the person of a minor child, were furnishing the child proper care, the letters of the father of the child, plaintiff in the action, tending to prove the affirmative of the issue, are admissible.

PARENT AND CHILD: Guardianship—Allowance for Support. Rec-2 ord reviewed, and *held* that an order for the payment by a parent to a guardian of a monthly allowance for the support of a minor should be set aside, especially in view of the fact that there was no prayer for such allowance.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

JUNE 23, 1922.

JOSEPH NUNN and Daisy Nunn were, several years ago, ap-

pointed guardians of Wilma Emma Koons, a child five or six years of age. Petitioner, William Koons, is her father; and on November 5, 1920, he petitioned the court to remove the said guardians, and to appoint some other person. The case is entitled as in juvenile proceedings for removal of guardians. After a full hearing, the trial court found against the petitioner, William Koons, and he appeals.—*Modified and affirmed.*

*T. B. Snyder,* for appellant.

*G. L. Norman,* County Attorney, *R. N. Johnson, E. C. Weber,* and *J. M. C. Hamilton,* for appellees.

PRESTON, J.—1. In the latter part of 1917, Daisy Nunn filed her petition for the appointment of a guardian for the child Wilma. That petition recites that she was a resident of Lee County; that the child Wilma, then 16 months old, and a resident of said county, was a dependent and neglected child, for that the child was not supported by its mother, and that the father is an inmate of the penitentiary; that said child had been cared for by said petitioner since November 4, 1916; that the said child was then in the custody of said Daisy Nunn. Notice of this application was served on the petitioner herein, William Koons, and on February 23, 1918, the court, by appropriate order, found that the child Wilma was a neglected child, and that the whereabouts of its mother were unknown, although she was duly and legally served with notice of said action; that Mr. and Mrs. Nunn are proper persons to have the care and custody of said child. They were duly appointed guardians of the person and property of the said Wilma. On November 10, 1920, appellant, William Koons, filed his petition herein, reciting the appointment of the Nunns as guardians, under the order before referred to, and alleging that under said guardianship the child was under the care, custody, and control of the Nunns, since said order. The petition alleges that the Nunns are unfit persons to have charge of the said child, and that the child is kept in an unfit place, and under surroundings and conditions improper and detrimental to the physical and moral welfare of the said Wilma. The petition asks that the court

remove said guardians and appoint some other person. It states that the petitioner has not a home of his own, to properly care for the child, but that at some time in the future he hopes to be able to have a home of his own, and to properly care for his said daughter. He alleges further that he has contributed to the support and maintenance of said child while she has been with the Nunns, as much as he was able, and that he is now willing and able to contribute to the support of said child; that Arvin Hays and wife are willing to take the child and rear it in their home, conditioned upon their appointment as guardians; that they are proper persons to act as guardians and rear the child. The matter came on for hearing in January, 1921, and evidence was submitted, and the case taken under advisement. On January 25, 1921, the Nunns asked that the entry of an order be withheld, and that they be given an opportunity to introduce further testimony. This was granted; and on February 3, 1921, additional counsel appeared for the Nunns, and the case was assigned for further hearing, February 14, 1921, at which time further evidence was heard; and on February 21, 1921, the court ordered that the child Wilma be remanded to the custody of Joseph and Daisy Nunn, guardians, and that they have control of said minor, and that their guardianship remain until further order of the court. The order also required petitioner, William Koons, the father, to pay $15 per month for the support of the child, and that he have reasonable and proper privileges of visiting his daughter at the home of the guardians; but that said privileges did not authorize him to remove the child from the custody of the guardians. The costs of the hearing were assessed against said petitioner. The order further provides that said petitioner shall have the privilege of applying to the court and introducing further testimony, on proper application, at the termination of his parole, or when he is finally released from his obligations to the prison authorities of the state of Indiana.

The principal question in the case is, as we view it, one of fact; and this question is whether the Nunns are suitable and proper persons to act as guardians, and to have the custody of the child, and whether the surroundings and conditions in

their home are proper. The petitioner is a man about 40 years of age. He and Wilma's mother were married in Omaha, in 1915. Prior to that, he had been sent to the penitentiary in Nebraska, on an abortion case. From Omaha he went to Perry, Iowa, where Wilma was born, in 1916. In 1916, petitioner was sent to the penitentiary from Perry. His wife and child went to Fort Madison. It is conceded that the mother was not a good woman. As we understand it, she abandoned the child, soon after moving to Fort Madison. At any rate, her whereabouts are now unknown. Petitioner had also been paroled from the penitentiary in Indiana, about 1905, and had violated his parole. He served his term in the Iowa prison, and was then taken back or returned to Indiana, to complete his former sentence. He either served out his term in Indiana or was again paroled, and returned to Fort Madison, where he remained a few months. It is contended by appellees that he then made improper proposals to Mrs. Nunn, and that she repulsed him; that he then began this proceeding. It is contended by appellant's counsel that the imprisonment has had the desired effect. Petitioner appears to have affection for the child. His letters to the Nunns and to the child, and other circumstances, so indicate. He does not claim to have a proper place himself to care for the child, but desires that Mr. and Mrs. Hays shall take her. We do not understand that there is any objection to the character of the Hayses or to their ability to care for the child. Mrs. Nunn testifies that the mother of Wilma gave the child to her, and we take it that this was while petitioner was in the penitentiary. The child seems to have been a burden to the mother. At that time, the child was poorly cared for, and became sickly, and broken out with sores. It is doubtless true that, in this condition, it would have been difficult to find a place for the child by the Home Finding Associations, or otherwise. The child was in the condition described when she was taken by the Nunns, who were childless. They took her, cared for her, and now have become attached to and have affection for the child. The Nunns are not possessed of any considerable property. He is a laboring man. Notwithstanding appellant's claim to the contrary, the child is well cared for. It is claimed by appellant

that Mrs. Nunn is not a woman of good character. Before her marriage, she was compelled to work for a living as a waitress, or in similar employment; but the evidence introduced does not show that she has been guilty of any impropriety since her marriage. A number of witnesses have testified. We deem it unnecessary to go into the details of the evidence. The trial court saw the witnesses. From the record, we think the trial court was justified in finding that the Nunns were suitable persons to have the custody of the child, and that the court did not err in refusing to set aside the guardianship of the Nunns. We are of opinion that it is for the best interests of the child that it remain with the Nunns.

Appellant cites us to cases in regard to the natural right of the parent to the custody of his minor child; but we have held that the natural parents may, by agreement or conduct, deprive themselves of this natural right. *Smidt v. Benenga,* 140 Iowa 399. Appellee cites Sections 254-a14 and 254-a20, Code Supplement, 1913, which provide, in substance, that, if a child under 16 years of age shall be found to be neglected, the court may make an order committing the child to the care of some suitable state institution, or to the care of some reputable citizen, or to some industrial school, etc.

2. Appellant assigns as error the admission in evidence of letters written by petitioner to Mr. and Mrs. Nunn. The first is dated July 8, 1917, and is written on prison stationery, and addressed to Mrs. Nunn. In it he says, among other things:

1. GUARDIANSHIP: proper care: evidence.

"I am truly pleased to hear of my little darling getting along so well; and mere words cannot express how I appreciate your kindness to my little darling. But I pray that God may grant me to live until I show you how much I appreciate your kindness."

This was followed by a letter addressed to the child. Another letter is dated August 25, 1917, on prison stationery, addressed, "My Dear Friends." In it he states that he enjoyed the short time they had the baby to see him, and that he can hardly wait until visiting day comes again, and:

"You do not realize how much I appreciate all you have

done for baby and I; and may you be righteously rewarded for all your loving care for the baby," etc.

The objection to the letters was that they were incompetent, irrelevant, and immaterial. The argument now is that they were not admissible, because petitioner, being in prison, did not then know the conditions as he now claims them to be. This would not render the letters inadmissible. We see no reason why they were not admissible, being written by petitioner himself, a party to the proceedings.

3. It is next contended that the court erred in ordering petitioner to pay the guardians $15 per month for the support of the child. It appears that petitioner had contributed to the

2. PARENT AND CHILD: guardianship: allowance for support. child's support theretofore. We do not understand appellant to challenge the authority of the court to render such a judgment in a proceeding of this kind. We do not pass upon that question. The objections to the allowance are that no such relief was asked in the pleadings; that it is contrary to the undisputed written contract between petitioner and Mrs. Nunn. The petitioner testifies:

"I arranged with Mrs. Nunn when she took the child. We had a written contract with her. She destroyed it. It was in my box of letters in her care, and when the box came back, the contract was missing. I was to pay $2.25 per week, and I have paid that, and more."

Another objection to such allowance is that Mrs. Nunn testified that she told petitioner to keep his money; that she did not want it; that she wanted the baby and nothing else, and did not want any of his money. Mrs. Nunn did so testify. And further, that he ought not to be compelled to support the child elsewhere, since he is willing to take her and support her himself, or in the home of a new guardian, selected by him. Appellees do not now seriously contend for the allowance.

Considering these, and all the other circumstances in the case, we think the trial court erred in making the allowance of $15 per month. The order appealed from is modified to that extent. In other respects, the judgment is affirmed. The larger part of the 94 pages of printing is in regard to the prior pro-

ceedings, and the evidence bearing upon the question as to whether the guardianship ought to be changed. A small part of the printing has reference to the question as to the allowance of $15 per month. $5.00 of the printing will be taxed to appellees; the remaining costs in this court, to appellant.—*Modified and affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.