HOWARD EUGENE WATTERS, by his next friend, EVA MAE WATTERS, appellant, v. DORIS JEAN WATTERS, appellee.

No. 48028.

(Reported in 53 N.W.2d 162)

MAY 6, 1952.

Life & Davis, of Oskaloosa, for appellant.

Gilbert & Scholz, of Oskaloosa, for appellee,

742

MULRONEY, J.—This is a habeas corpus proceeding upon the petition of the paternal grandmother of one-year-old Howard Eugene Watters seeking to deprive the child's mother of his custody on the ground she is an unfit and improper person to retain such custody. The child's father was killed in action while in the Army in Korea when the child was about six months old.

Doris Jean Watters was living with her soldier husband, Cecil Watters, in the state of Washington in the summer of 1950. When he embarked for Korea, Doris Jean returned to Mahaska County with her infant son, Howard Eugene, where she has lived ever since in the home of her adoptive parents, Mr. and Mrs. C. E. Hartman, in a small village named Evans located about four miles west of Oskaloosa.

Cecil's parents live in Oskaloosa, Iowa, and it is the paternal grandmother's contention on this appeal that the evidence showing the character and conduct of Doris Jean from the time she returned to Evans in August of 1950 down to the bringing of the action in May of 1951 establishes that she is an unfit and improper person to have custody of the child. The trial court held it did not, and, while the appeal is de novo, we give much weight to the trial court's decision. Smidt v. Benenga, 140 Iowa 399, 118 N.W. 439; Ellison v. Platts, 226 Iowa 1211, 286 N.W. 413; Maron v. Maron, 238 Iowa 587, 28 N.W.2d 17.

Doris Jean was twenty-one years of age at the time of the trial. Her foster parents, the Hartmans, are an elderly couple (Mr. Hartman is eighty) and their home is a large old nine-room house with electricity and furnace and an electric water pump. Since petitioner admits the only issue on this appeal is Doris Jean's fitness as custodian of her child we will adopt the trial court's appraisal of the Hartmans and their home and say the following finding of the trial court is well supported by the record: "* * * the house is old, it is of large size, modern, adequately though modestly furnished and from a physical standpoint constitutes an acceptable place of abode. * * * Mr. Hartman is a kindly appearing old gentleman, who gets around remarkably well and is mentally alert. It appears that Mrs. Hartman is subject to infrequent heart attacks but she remains active and does most of her own housework. Both Mr. and Mrs. Hartman have an affectionate regard for Howard Eugene and willingly

participate in caring for him. No improper conduct on the part of either Mr. or Mrs. Hartman is even suggested."

I. Petitioner argues the evidence showing Doris Jean's character and conduct warrants the conclusion that she is unfit to have the infant's custody. Several witnesses said she had a bad reputation as to character. The trial court in his findings of fact made this observation with reference to this character testimony: "While evidence was offered seeking to establish a bad reputation or bad character on the part of the defendant it appears to the court to reflect a situation wherein the defendant was made the victim of much idle gossip, magnified far beyond actualities."

We agree with the trial court's findings as to this reputation testimony. Much of it was girl gossip by girls who said they did not like Doris Jean and much of it was inadmissible as hearsay statements of particular persons. In any event it falls far short of establishing "so gross a character that the morals of the child would be seriously endangered." 67 C. J. S., Parent and Child, section 12, page 661.

II. It would serve no useful purpose to detail petitioner's testimony as to the acts of misconduct on the part of Doris Jean, which petitioner argues shows her unfitness to have the custody of her child. About a half dozen of petitioner's twenty-eight witnesses said they had seen Doris Jean intoxicated one to three times, mostly the same times. There was evidence that after her husband was killed she began to spend much time in a beer tavern. She admitted she drank beer but seldom touched whiskey and admitted she did become intoxicated on one occasion. The rest of the conduct evidence is that she ran around with men. There is evidence that she was seen dancing with the brother of a married girl friend once before her husband's death and evidence of one or two acts after her husband died which might be termed indiscreet.

There is not the slightest evidence that Doris Jean's conduct interfered with her parental obligations to her child. Her child was never abandoned or left alone. When she was not with him in the evenings the Hartmans or a baby sitter would be there. The evidence shows beyond a shadow of a doubt a great love and affection between Doris Jean and her child. Any occasional

744

lapse from moral standards on the part of Doris Jean which might be inferred from this record meant no omission from the duties of motherhood. She is not an habitual drunkard. The evidence of Doris Jean's conduct falls far short of establishing her unfitness such as to deprive her of her child. In re Kneeland's Guardianship, 160 Wash. 64, 294 P. 562.

III. Much of petitioner's evidence is devoted to showing her fitness to have the custody of the child and her home and her financial condition. Petitioner has no statutory right of custody and she has never had actual custody of the child. The question of her fitness to have custody of the child is not reached. "The unfitness which deprives a parent of the right to the custody of a child must be positive, and not merely comparative * * *." 67 C. J. S., Parent and Child, section 12, page 659. If it were shown petitioner was in more fortunate financial circumstances than the mother and had a better home (a conclusion not warranted by this record) there would still be no occasion for separating this mother and her child.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.