BOBBIE ELLIS JUSTICE, by her father and next friend, JOHN ELLIS JUSTICE, appellant, v. MAE C. HOBBS, appellee (consolidated with four other cases).

No. 48426.

(Reported in 63 N. W.2d 882)

APRIL 7, 1954.

Evans, Duncan, Jones, Hughes & Riley, of Des Moines, for appellant.

Ben B. Hockenberg, of Des Moines, for appellee.

HAYS, J.—As originally commenced this was an action

wherein a father sought to obtain the custody of his minor child by a writ of habeas corpus. At the time of trial, four other cases pending in Polk County and at least indirectly connected with the question of custody were consolidated with it for trial purposes. Case No. 27315 involves a petition to modify the original divorce decree wherein the mother was given the sole custody of the child, by granting the same to the father, designated as plaintiff-appellant herein. Cases No. 31733 and No. 35024, probate, involve guardianship over the child. Case No. 4018 is an application by the maternal grandparents for the adoption of the child. The defendant in the habeas corpus action is the maternal grandmother, Mae C. Hobbs. The trial court denied relief to the plaintiff in all matters, except the adoption proceedings, Case No. 4018, which were dismissed. The plaintiff has appealed.

As this court has said many times in actions of this kind, the primary question of concern to the court is one of fact and precedents are of little value in determining any instant case. While much weight is given to the trial court's decision, the appeal is triable de novo with the basic question being—what is for the best interests of the child. Lancey v. Shelley, 232 Iowa 178, 2 N.W.2d 781; Paulson v. Windelow, 236 Iowa 1011, 20 N.W.2d 470; Watters v. Watters, 243 Iowa 741, 53 N.W.2d 162; Durst v. Roach, 245 Iowa 342, 62 N.W.2d 159.

Plaintiff and Darlene Hobbs (now Heard) were married in May 1941 at Des Moines, Iowa, where he, a member of the armed forces, was stationed. He was a citizen of North Carolina and she of Iowa. In the summer of 1942 he was sent overseas, and in October their daughter, Bobbie Ellis Justice, being the child here involved, was born. From birth the child has lived in the home of her maternal grandmother. For a while the mother was in the home but during recent years has been living elsewhere. In 1944 plaintiff was returned to this country and after a brief visit in Des Moines, with his family, returned to New York where he was stationed. During the time he was overseas the mother received an allotment from plaintiff's pay and they corresponded frequently. In the fall of 1944 the mother and child spent a month in New York and at this time the matter of a divorce was discussed. It was agreed that if a divorce was

granted to the mother, she should have the sole custody of the child, and in March of 1945 such a divorce decree was entered, Case No. 27315. There was no provision made for alimony or child-support payments.

In August 1945 plaintiff was discharged from the service with a 50% disability due to combat injuries and from then through 1947 spent some fourteen months in government hospitals. From that time until in 1950, when he completed a business course under the GI bill, he lived in his mother's home and did not have steady employment. He was married in 1948 and has a daughter, about four years old, by this marriage. At the time of the trial he was earning $41 per week and entitled to periodic advancement in salary. He was also receiving $15 a month from the government, his disability having been corrected to a 10% rating. During this time his only contact with Bobbie was through letters from her mother until in 1948 and since from the grandmother.

In January 1946, apparently at the request of the Veterans Administration, Mrs. Hobbs was appointed guardian of the child, Case No. 31733, and received payments from the government due Bobbie, as the child of a disabled veteran. These payments totaled $477.48. This guardianship was closed by order of court in February 1949. On April 12, 1949, Mae C. Hobbs petitioned the court that she be appointed the guardian of the child, alleging that the whereabouts of the father was unknown, and that the mother was not a fit person to have the custody of the child, Case No. 35024. This appointment was made and under this authority Mrs. Hobbs received an additional $204 from the government. All funds have been spent, under order of court, for the care of Bobbie. During this time there was occasional correspondence between plaintiff and Mrs. Hobbs, relative to the welfare of the child, but the guardianship proceedings of April 1949 were unknown to him.

Early in 1951 plaintiff received a letter from the Polk County Welfare Department relative to his ability to furnish support for the child and he learned for the first time that the government payments had ceased. There was considerable correspondence between the department and plaintiff, in which he solicited their aid and advice as to how he could obtain the child.

In October 1951 he came to Des Moines and called at the Hobbs home for the purpose of getting Bobbie. Upon the refusal of the grandmother to release her, he commenced this action for a writ of habeas corpus.

Mr. and Mrs. Hobbs, both in their late sixties, have been married for some thirty-five years. They have three daughters, Dorothy Bekish, age 28; Daisy Conn, age 29; and Darlene Justice Heard, age 31, none of whom resides in the Hobbs home. The record quite clearly shows that all three of these daughters are worthless, and especially so is this true as to Darlene Justice Heard. This is conceded by both her father and mother, and it was to prevent Darlene taking Bobbie that the guardianship matter of April 1949 was instituted. While it is claimed by Mrs. Hobbs that Darlene no longer has any contact with Bobbie, the record shows at the time of trial she was living in the immediate neighborhood with her husband, or purported husband, who is a Negro, and has frequent contact with Bobbie both in and out of the home.

The Hobbs home, at 605 S.E. 4th Street in Des Moines, is a small, four-room cottage with water and electricity. but not sewer. It is free of all encumbrances. Living in the home are Mr. and Mrs. Hobbs and four grandchildren: Rosemarie and Robert Conn, ages eleven and nine; Joan Bekish, age ten; and Bobbie. Joan receives a monthly compensation check from the government in the sum of $57.50. The Conn children receive under ADC the sum of $30 per month. Mr. Hobbs, a disabled veteran, receives a pension of $63 per month and earns $35 per week by working in a near-by store. Neither Mr. nor Mrs. Hobbs has good health.

By agreement at the trial an investigation of the Hobbs home was made by the Polk County Welfare Department and reported to the court. We quote a paragraph from this report which we think is well sustained by the evidence offered at the trial, and fairly states the situation. It is: "However, there are serious drawbacks. Financially, the home is marginal, dependent to some extent upon the benefits which are paid to the children. The grandfather earns a small wage, but is not a strong personal force in the home. The grandmother, Mrs. Hobbs, is 66 years of age, suffers from arthritis and varicose

veins. She is rigid, limited in education, failed to rear her own children to successful maturity, and is unlikely to be able to provide understanding and supervision during the approaching adolescence of these four grandchildren. Schools report that these children all show the same type of behavior difficulty. Insecurity at home seems likely to be a contributing cause. Educational and moral standards are known to be low." It might be noted that this report advises leaving Bobbie with Mrs. Hobbs.

The following appears to be the situation as to the plaintiff and the home to which he asks to take this child: He is an only son and lives with his wife and child in an apartment in his mother's home. This home, a seven-room house and fully modern, is located in a desirable neighborhood and near to school. His wife works four hours a day at a Kress Dime store where she has been employed for eighteen years. While she and her husband are of different religious faith, they both attend church regularly. The testimony offered by the plaintiff was mostly in deposition form but it appears that the family is reputable and respected in the community. His mother was one who testified by deposition and expressed a desire to have the child. His wife was not a witness.

Again turning to the Welfare report, it appears that a report has been received from the North Carolina Department of Child Welfare, evaluating the Justice home in Charlotte, North Carolina. It then states: "The home in Charlotte has many positive qualities. Members of the household are Mr. Justice, his wife Evelyn, his 57-year-old mother, Nellie, and a 3½-year-old daughter. The home, a comfortable seven-room house, is owned by the grandmother; the financial circumstances are adequate, and the personal traits of the family are reported to be favorable. They are eager to accept Bobbie into their home." The testimony offered on the trial substantiates this evaluation.

In all cases dealing with the care and custody of a minor child, and especially where a complete change of environment is involved, any decision made must of necessity be made with a hope and a prayer that it may prove to be the correct one. No one can definitely foretell the future. It is true, as stated in the Welfare report and by the trial court in its findings of fact, that the removal of this child from the only home she has ever

known and placing her among virtual strangers would be an emotional shock to her. However, under this record, we think it is likewise true that to leave this child in her present environment is, in all probability, to invite her to become a delinquent like her mother, or, within the foreseeable future, have her committed to a State Juvenile home. Neither offers her the possibilities held out to her in the home of her father, notwithstanding that an emotional shock may follow such a change. It is our judgment that the best interests of Bobbie Ellis Justice require that she be placed in the custody of her father and taken to his home in North Carolina. While this means placing her beyond the jurisdiction of the Iowa courts, there is no reason to think that the State of North Carolina will be less solicitous of her welfare than would be the State of Iowa.

In Case No. 27315, while we do not have the benefit of the record in the original proceedings, it is a fair inference that the mother of the child was deemed by all parties, and the trial court, to be a proper person to have the custody of the minor child. It appears in this record that at the time of the divorce the father was in the armed forces, was without an established home and had a 50% disability. The circumstances surrounding both the father and mother have materially changed, as set forth above. As between the father and the mother, there can be no question but that the decree should be modified and the father given the custody.

Case No. 35024, probate, wherein Mae Hobbs was appointed legal guardian of the child, was based upon the incompetence of the mother and the alleged lack of knowledge as to the father's whereabouts. This record casts considerable doubt upon the truth of this allegation, but be that as it may the objections above set forth as to the grandmother's retention of control of the child apply, with equal force, to the continuation of this guardianship.

The case is reversed and remanded with instructions to enter a decree in Case No. 27315, modifying the original decree therein by granting the custody of the child to the father. In the habeas corpus action, an order be entered directing Mrs. Hobbs to immediately deliver Bobbie Ellis Justice into the care and possession

of her father. In Case No. 31733, plaintiff's objections to the proceedings be dismissed. In Case No. 35024, appropriate orders be entered leading to the immediate closing of this guardianship. —Reversed and remanded with instructions.

All JUSTICES concur.