## Ex Parte REINHARDT.

(No. 6,777.)

(Submitted October 20, 1930.   Decided October 24, 1930.)

[292 Pac. 582.]

*Mr. E. C. Kurtz* and *Mr. J. D. Taylor*, for Complainant, submitted a brief and argued the cause orally.

*Mr. H. C. Packer*, County Attorney of Ravalli County, for Respondent J. S. Stokes, Sheriff, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion.

A petition was filed in this court on October 8, 1930, by Mrs. Adolph Reinhardt, mother of Hattie Reinhardt, a minor, praying for a writ of habeas corpus to secure the release of Hattie Reinhardt from the custody of respondent J. S. Stokes, sheriff of Ravalli county. In the petition it is alleged that ever since September 23, 1930, Hattie Reinhardt has been unlawfully confined and restrained of her liberty in the county jail at Hamilton by Stokes, without any writ, warrant, judgment, order or other authority; that petitioner has demanded the custody of the minor from Stokes, but the custody has

been refused; that Hattie Reinhardt lived with petitioner until she was taken into custody by Stokes; that petitioner has not abandoned or neglected her daughter and is a fit and proper person to have her custody and is able to support her.

Upon the filing of the petition a writ was issued as prayed for and made returnable before me. On the return day Stokes, appearing by his counsel, the county attorney of Ravalli county, filed a motion to quash the writ of habeas corpus, together with a return to the writ. The return sets forth that Hattie Reinhardt has never been confined or detained by Stokes at the county jail, or elsewhere, but states that she has voluntarily and of her own wish, and at her request, been staying with Stokes and his family in the residence part of the jail and that she has been free to go when she wished; that she has charged her father with having sexual intercourse with her for about three years and with being the father of her child born February 28, 1929; that she has stated that her father, Adolph Reinhardt, has threatened to kill her and that she fears to go home; that Adolph Reinhardt is now confined in the county jail under a $1,500 bond which he may obtain at any time and return home. In the return request is made that such order be made as shall appear for the best interests of the minor.

To the return are annexed three affidavits. One was by Mrs. Maggie Smith Hathaway, secretary of the Bureau of Child Protection, in which she states that upon being informed of the improper relations between members of the Reinhardt family, she in company with Stokes went to the Reinhardt home on September 23, 1930, and that Hattie Reinhardt then stated that her father was the father of her baby and that both he and her brother had "used" her; that she asked Mrs. Reinhardt if she knew what was going on between Hattie, her father, and her brother, and she replied, "Yes," and added that "Hattie does not mind me." When asked why she did not stop it, she remained silent, and when asked why she did not tell an officer, she replied, "I did not know any officer to tell."

Hattie Reinhardt made affidavit to the effect that her father is the father of her child and that her brother also had intercourse with her; that her father had made repeated threats to kill her if she informed anyone of their relations; that she believes if her father secured bail and returned home she would be in danger of personal violence; that her mother has made false charges against her in regard to relations by her with other men; that her mother knew of her relations with her father and brother but made no attempt to prevent their recurrence; that she is voluntarily staying with Stokes and his family because she does not consider her home a proper place to reside; and that it is her desire to remain under the protection of the sheriff or other officer.

Jane Bailey, chief probation officer of the fourth judicial district, made affidavit that Hattie Reinhardt was seventeen years of age on August 23, 1930; that she investigated her home surroundings and found that she does not have proper parental care, training and teaching; that for more than three years the condition of the Reinhardt home has been unfit for the child, owing to the depravity of her father and brother; that she is a material witness in each of the two cases of *State of Montana* v. *Adolph Reinhardt,* and *State of Montana* v. *Albert Reinhardt,* which were filed in the fourth judicial district; that Hattie Reinhardt has stated to her that she did not wish to return to her home and has requested that she be allowed to go to school or to obtain work to earn a livelihood.

Petitioner moved to quash the return to the writ upon the ground that it showed no legal cause for the detention of the child. Respondent's motion to quash the writ was upon the ground that the petition alleges "that on the 4th day of Oct., 1930, petitioner herein prepared and presented a petition asking for the custody of said minor child to the Honorable James M. Self, Judge of the District Court of the Fourth Judicial District of the State of Montana in and for the county of Ravalli, the county where said minor child is confined and restrained. That a hearing was had upon said petition and said court refused to grant petitioner's application for the cus-

tody of said minor child," and that the order of the court in denying the petition in the absence of an appeal became and is *res adjudicata*.

On the hearing here it was conceded that the application ■ made before Judge Self was the same as the instant one, viz., a petition for a writ of habeas corpus, and that the return there made raised the same matters here relied upon. Whether or not that order became *res adjudicata* depends upon the proper scope of the inquiry in a proceeding such as this. Ordinarily, the doctrine of *res adjudicata* has no application in habeas corpus proceedings. As was stated by Mr. Justice Galen in the case of *In re Pyle,* 72 Mont. 494, 234 Pac. 254: "A decision on habeas corpus by one court does not constitute a bar to another proceeding of the same character in another court having jurisdiction, and the fact that a justice of this court has once issued a writ, returnable for hearing before a district judge, does not, after decision by the district judge, divest this court of jurisdiction to entertain a second application, issue the writ, and make it returnable before another district judge, or one of its members or before the court itself. No appeal is permitted in habeas corpus cases, and successive applications for the writ may be made until the judicial power of the state has been exhausted."

But respondent, in reliance upon the case of *In re Thompson,* 77 Mont. 466, 251 Pac. 163, contends that a different rule obtains in a proceeding in habeas corpus having as its object the determination of the right to the custody of a minor child. Were this controversy between conflicting claimants to the custody of a minor and had Judge Self awarded the custody to one of the claimants, that case would be controlling and an appeal would have been available and the doctrine of *res adjudicata* would be applicable. (12 R. C. L. 1255.) But the respondent here is not contending that he has any right to the custody of Hattie Reinhardt, either as a relative of the minor, as agent of the father as was the situation in the *Thompson Case,* or by virtue of the order of any court, or otherwise. The controversy here is not to determine which

of two conflicting claimants is entitled to the custody of the child. In this proceeding the only proper subject of inquiry is whether the child is unlawfully restrained of her liberty by respondent. The question of awarding the custody of the minor is not here involved, nor was it involved in the proceeding before Judge Self, for it is manifest that no order was made by Judge Self awarding the custody to Stokes or anyone else. It is plain that if that had been done, the order would have been presented here. In fact, had the petitioner here presented a case in which there was a contest between claimants asserting conflicting rights over the custody of a minor, the writ never would have been issued from the supreme court. As was said by the court in *Child Saving Institute* v. *Knobel,* (Mo. App.) 29 S. W. (2d) 725: "There are two kinds of writs of habeas corpus involving an infant. One is directed toward freeing the child from imprisonment and the other to exercise the powers of a court of general equity jurisdiction over the custody of the person of the infant." Were this action one of the latter class, the district court would have original jurisdiction (sec. 11, Art. VIII, Mont. Const.), with the right in the unsuccessful claimant to appeal to the supreme court (sec. 3, Art. VIII, Id.).

It is only to free a person of imprisonment or restraint ▪ where the supreme court will exercise its original jurisdiction in habeas corpus, and it will not issue a writ of habeas corpus originally to exercise general equitable jurisdiction in awarding the custody of minors; and in my opinion, when the petition presents a case of unlawful restraint, as here, the nature of the proceeding may not be transformed into a general equitable proceeding by a request made in the return.

It is my conclusion that, since this controversy is not between conflicting claimants to the custody of the minor child, the order of Judge Self denying the petition is not *res adjudicata,* but that the rule stated in the case of *In re Pyle,* supra, has application. The motion to quash the writ is therefore overruled. It then remains to determine whether the return states sufficient facts to justify refusal of the relief sought.

288

Whether one who has, or claims, no legal right to the ▮ custody of a child can question the fitness of a parent to care for it was not expressly decided in the *Thompson Case*. The court assumed, for the purposes of that case only, that he could not. This assumption was proper, for the rule is that one who has or claims no legal right to the custody of a minor may not be heard to say in a proceeding in habeas corpus that the parents are not fit and proper persons to have the custody. (*Lovell* v. *House of the Good Shepherd*, 9 Wash. 419, 43 Am. St. Rep. 839, 37 Pac. 660.) And it has been held that the moral fitness of the mother may not be questioned in habeas corpus proceedings even by those who have adopted the child, unless the right of the mother has been cut off by a valid adoption decree. (*Rockford* v. *Bailey*, (Mo. Sup.) 17 S. W. (2d) 941.)

In this state the father and mother are equally entitled to ▮ the custody of their unmarried minor children. (Sec. 5834, Rev. Codes 1921.) In case of abuse of parental authority ample provision has been made by appropriate action to free the child from parental dominion. (Sec. 5840, Id.) Also any child under eighteen years of age who knowingly associates with a vicious or immoral person, or who is growing up in crime, is a "juvenile delinquent person" under the express provisions of section 12275, Id., and under that and the succeeding sections provision is made for taking the child from the custody of its parents and ordering the child to be placed in the family of some suitable person recommended by the probation officer, or elsewhere. Obviously, this cannot be done in a proceeding in habeas corpus but must be done by the filing of a proper petition as provided in section 12279, Id. The jurisdiction is by statute expressly vested in the district courts. (Sec. 12277, Id.) Unless one of the statutory methods of depriving parents of their right to the custody of their children has been pursued, their right continues. (*In re Satterthwaite*, 52 Mont. 550, 160 Pac. 346; *Ex parte Martin*, 29 Ida. 716, 161 Pac. 573; *In re Hart*, 21 Cal. App. 30, 130 Pac. 704.) This conclusion follows also from section 5841, Id.,

which provides: "The authority of the parent ceases: 1. Upon the appointment, by a court, of a guardian of the person of a child; 2. Upon the marriage of a child; or, 3. Upon its attaining majority." Under the familiar rule embodied in the statement *expressio unius est exclusio alterius,* the enumeration of these instances, when the authority of a parent over his child ceases, excludes others.

As indicated above, the state, as an interested party in the welfare of minor children, is not remediless in case of unfitness of parents, for under section 5840, supra, proceedings may be instituted by the county commissioners, while under section 12279 a proper petition may be filed by any reputable person resident of the county, which, of course, includes the county attorney. I have no doubt that if in such a proceeding the matters referred to in the affidavits presented here are established, appropriate relief will be granted for the protection of the minor.

The only remaining question to be determined is the effect of the return showing that there is no actual restraint exercised by respondent in holding the minor and that it is her wish to remain with the respondent and his family. The general rule in this respect is that "the writ may not only issue without the request of a child but even against its express wishes; and it may issue although the person in whose custody the child is denies that he is restraining or preventing the child from returning to its parents if it appears that he harbors the child and refuses to permit the parents to exercise parental authority to enforce a return." (13 R. C. L. 1214. See, also, *Ex parte Swall,* 36 Nev. 171, Ann. Cas. 1915B, 1015, 134 Pac. 96; *Prieto* v. *St. Alphonsus Convent of Mercy,* 52 La. Ann. 631, 47 L. R. A. 656, 27 South. 153; *Moore* v. *Christian,* 56 Miss. 408, 31 Am. Rep. 375.) It is worthy of note that respondent does not specifically deny in his return the allegation of petitioner that she has demanded the custody of the child from respondent and that he has refused to accede to the demands.

There is sufficient restraint in contemplation of law to justify relief by habeas corpus. No legal cause appearing for the restraint or for the continuation thereof, the motion to quash the return is sustained and the relief prayed for is granted.