[Crim. No. 3024.   Second Appellate District, Division Two.—November 24, 1937.]

THE PEOPLE, Respondent, v. G. H. ZIMMER, Appellant.

G. Vernon Brumbaugh for Appellant.

U. S. Webb, Attorney-General, Warner I. Praul, Deputy Attorney-General, Buron Fitts, District Attorney, and Jesse J. Frampton, Deputy District Attorney, for Respondent.

WOOD, J.—The appellant, Robert Rubin and Harry R. Neumann were jointly accused in an indictment containing

eighteen counts charging grand theft and thirteen counts charging drawing and uttering bank checks with intent to defraud in violation of section 476a of the Penal Code. The action was tried before the court without a jury and all of the defendants were found guilty on all of the counts. Defendant B. H. Zimmer appeals from the judgments and from the order denying his motion for a new trial.

Appellant contends that the evidence is insufficient to sustain the judgment of conviction. Defendants were connected with the Rose Corporation, which operated a cafe in the city of Los Angeles known as El Mirador Cafe. They opened accounts in the Hollywood State Bank under the names of "Rose Corporation" and "B. Zimmer Agent." Defendants thereafter caused to be opened in their respective names bank accounts in various other banks in the city of Los Angeles. Defendants entered into a conspiracy with certain employees of the Hollywood State Bank in which it was agreed that in consideration of the receipt by the employees of certain bribes in money, clothing, meals and liquor the bank employees would cooperate with them in fraudulently obtaining the funds of the bank to the uses and purposes of the defendants. In furtherance of the conspiracy defendants drew checks upon various outside banks in which, to the knowledge of defendants and the corrupted employees of the Hollywood State Bank, the drawers of the checks had insufficient funds or credit. These checks were cashed by the corrupted employees, who used the funds of the Hollywood State Bank entrusted to their care. The funds so obtained were used by defendants until the checks had gone through the usual clearing house channels, whereupon defendants wrote a second group of checks under the same circumstances, which in turn were cashed by the corrupted employees and the cash obtained thereupon deposited by defendants in the various bank accounts to pay the checks theretofore drawn. Various sums of money were delivered by the corrupted employees to defendants on street corners in return for the worthless checks given by defendants. These checks were withheld by the employees who in some instances carried them in their pockets for days. Another method was followed by the conspirators by which defendants drew checks against the accounts in the Hollywood State Bank. These checks were cashed at an outside bank and upon their reaching the Holly-

wood State Bank through the clearing house the corrupted employees caused the checks to be paid by draft but failed to charge the checks so paid to the accounts of the Rose Corporation and B. Zimmer Agent. In furtherance of the conspiracy the corrupted employees accepted false deposit slips from defendants and in one instance in order to cover up the defalcation they removed from the ledger a sheet containing an inactive account of another customer. In order to prevent suspicion on the part of the officials of the banks in which defendants were depositing the funds so fraudulently obtained, defendants converted the currency obtained from the corrupted employees into cashiers' checks which they purchased from other outside banks and the cashiers' checks were deposited in the banks against which the checks were drawn in lieu of the currency. The conspirators began operations in August, 1926, and continued until February 4, 1937, when the defalcations were discovered. During this time the Hollywood State Bank suffered a loss of $19,151 and the defendants fraudulently obtained the use of approximately $366,000 of the funds of the bank.

The prosecution presented evidence covering all the necessary elements of the crime of drawing and uttering checks as defined in section 476a of the Penal Code. The checks were drawn by defendants upon banks in which, to their knowledge, they did not have sufficient funds or credit for the payment of the checks upon their presentation. Appellant argues that he had a reasonable expectation that the checks would be paid upon their presentation and that some of the checks were actually paid. The funds, however with which the checks were paid were obtained by a repetition of the fraudulent acts and by the issuance of additional worthless checks. Defendants had no reasonable expectation of having the checks paid without the drawing and uttering of additional worthless checks upon the same victim they had defrauded by the original transaction.

Appellant is not aided by the argument that certain employees of the Hollywood State Bank had knowledge concerning the value of the checks. Defendants are not charged with issuing the checks with the intent to defraud the corrupted employees but rather they are charged with issuing checks with intent to defraud the banks. The corrupted employees with the knowledge of defendants, were falsifying

the records of the Hollywood State Bank and concealing from its officers the facts concerning the transaction with defendants. They had no authority to defraud the bank. "An agent can never have authority, either actual or ostensible, to do an act which is, and is known or suspected by the person with whom he deals, to be a fraud upon the principal." (Sec. 2306, Civ. Code.) Defendants cannot bribe employees of the bank to accept their worthless checks, knowing that the employees are violating their trust in appropriating the funds of the bank, and escape liability by asserting that knowledge on the part of the employees was knowledge of the bank.

Appellant points out that some the checks were actually paid. Payment of the checks under the circumstances here shown does not constitute a defense. The crime was completed upon the drawing and uttering of the checks with the intent to defraud. It was not necessary to show that the victim actually was defrauded. (*People* v. *Williams*, 69 Cal. App. 169 [230 Pac. 667]; *People* v. *Khan*, 41 Cal. App. 393 [182 Pac. 803]; *People* v. *Sherman*, 100 Cal. App. 587 [280 Pac. 708].)

The convictions on the counts charging grand theft are also sustained by the evidence. The corrupted employees fraudulently appropriated funds which had been entrusted to them and defendants conspired and cooperated with them. Although defendants could not be guilty of embezzling funds not entrusted to their care if acting alone and independently, the facts of the case disclose that defendants were acting in conjunction with and as accomplices of the employees of the bank. They are punishable as principals. (*People* v. *Fronk*, 82 Cal. App. 465 [255 Pac. 777]; sec. 971, Pen. Code.)

Appellant contends that he may not be found guilty of both the offenses of grand theft and issuing a check with intent to defraud in violation of section 476a of the Penal Code in view of the fact that the two offenses arise out of the same transaction. He cites no authority to support his contention. There is but little in common between the two offenses. To establish the crime of grand theft, when based upon the acts formerly classified as embezzlement, the prosecution must prove that a defendant fraudulently appropriated property which had been entrusted to him. To establish the crime of drawing and uttering a check in violation of section 476a of the Penal Code the prosecution must prove

that defendant wilfully and with intent to defraud drew, uttered or delivered a check with knowledge at the time of such making or uttering that the maker did not have sufficient funds in or credit with the bank for the payment of the check in full upon its presentation. It is apparent that the two offenses have but one element in common, the intent to defraud. Neither offense is included in the other. The test is the identity of the offenses as distinguished from the identity of the transactions from which they arise. A defendant may be convicted of two separate offenses arising out of the same transaction when each offense is stated in a separate count and when the two offenses differ in their necessary elements and one is not included within the other. (*People* v. *Majors*, 65 Cal. 138, 145 [3 Pac. 597, 52 Am. Rep. 295]; *People* v. *Bentley*, 77 Cal. 7, 9 [18 Pac. 799, 11 Am. St. Rep. 225]; *People* v. *Ciulla*, 44 Cal. App. 725, 726 [187 Pac. 49]; *People* v. *Brannon*, 70 Cal. App. 225, 228 [233 Pac. 88]; *People* v. *Herbert*, 6 Cal. (2d) 541, 547 [58 Pac. (2d) 909].)

■ Appellant contends that the trial court erred in admitting in evidence certain books and records of the Hollywood State Bank which had been falsified. The ruling of the court was correct. The records had been falsified by the employees of the bank who made the false entries in order to carry out the purposes of the conspiracy with the defendants. They were acts and declarations of coconspirators made during the existence of the conspiracy. (*People* v. *Doble*, 203 Cal. 510 [265 Pac. 184].)

The judgments and order denying a new trial are affirmed.

Crail, P. J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 23, 1937.