STATE ex rel. VEACH, Appellant, *v.* VEACH et ux.,
RESPONDENTS.
No. 8811.
Submitted May 25, 1948.   Decided July 3, 1948.
195 Pac. (2d) 697.

Messrs. Swanberg and Swanberg, of Great Falls, for appellant.
Mr. Stephen Swanberg argued the cause orally.

Messrs. Greenan & Manion, of Great Falls, for respondents.

No oral argument was made for respondent.

MR. CHIEF JUSTICE ADAIR:

This is a habeas corpus proceeding instituted in the district court of Cascade county, Montana. The case involves the question of the custody of a child, Ronald Medhaug Veach, now aged 7½ years. Relatrix, Carole Medhaug Veach, is the boy's mother. The respondents, Ross R. Veach, Sr. and Una Veach, his wife, have kept and cared for the child since he was 13 months old.

Following a trial the district court denied the petition, dismissed the writ and remanded the custody of the child to the respondent, Una Veach. From such judgment and order relatrix has appealed.

The child was born January 9, 1941, at Minot, North Dakota. At that time the mother, then aged 19 years, was unmarried. When but a few months old the baby was adjudged to be a neglected child by a North Dakota court, which delivered his custody to the Welfare Department of the state of North Dakota and placed the child's mother on probation for a period of three months. At the end of that period the child was returned to the custody of his mother.

On December 16, 1941, relatrix and Ross R. Veach, Jr., intermarried and lived together as husband and wife until the husband was inducted into the armed forces of the United States in 1942.

Upon entering the military service it was the understanding between relatrix, Carole Medhaug Veach, her husband, Ross R. Veach, Jr., and the latter's parents, Ross R. Veach, Sr. and Una Veach, respondents herein, that relatrix was to make her home with respondents who were to care for the infant, Ronald.

In December 1942, respondents, accompanied by relatrix and the infant Ronald, moved from Minot, North Dakota, to Havre, Montana, where all resided in respondents' home from December 10, 1942, until about January 25, 1943. While in Havre relatrix was variously employed,—first as a waitress in a cafe,—

next as a clerk in Woolworth's dime store, and finally as a barmaid in a local tavern.

On January 25, 1943, at about one o'clock in the morning the respondent Ross R. Veach, Sr., seeing relatrix in a tavern other than her place of employment, accompanied by a soldier, sought to have relatrix return home with respondent, which she declined to do, saying: "I am free, white and twenty-one, and married, and will come home when I get ready." Relatrix did not thereafter return to respondents' home but, leaving behind her child and her personal belongings, including all her clothes except only those which she was wearing, she departed from Havre without informing respondents that she intended so to do and without again seeing or communicating with respondents or her child.

Upon leaving Havre relatrix went to Williston, North Dakota, where she remained for about three weeks. She then left by train for Great Falls, Montana, passing through Havre where her child then was but she made no effort to visit or communicate with the child or with respondents in whose care and custody the child then was. After remaining in Great Falls for about two weeks relatrix left the state of Montana and took up her residence in the city of Seattle, state of Washington but again she made no effort to visit or communicate with either her child or respondents before permanently removing from the state of Montana, nor did she see her child or either respondent at any time from January 25, 1943, to July 23, 1947, covering a period of approximately 4½ years.

Relatrix testified that she left her infant in the custody of respondents because "they had always said they could take care of the child until I could find suitable work and I had no place to keep him." She testified that she did not call for her clothes at respondents' home before leaving Havre "because I thought I could always get them."

In October 1944 Ross R. Veach, Jr., was killed while in military service overseas and thereafter in the year 1945 relatrix went to Long Beach, California, for a short while. That same

year (1945) relatrix married George Pollard of Long Beach, California, at Reno, Nevada, with whom she lived but six days and subsequently obtained a decree of divorce from Pollard at Seattle, Washington. The record does not show where relatrix met Pollard, why she left him nor on what grounds she obtained her divorce.

Respondents continued to reside at Havre, Montana, until in February 1944 when they removed to Great Falls, Montana. At the time of the trial respondents were each 56 years of age. They are the parents of five children of whom two are now living, both being of age, one of whom is in the army and the other being married and residing in Great Falls, Montana. The respondent Ross R. Veach, Sr. is regularly employed by the Western Fruit Express Company at a salary ranging from $191 to $237 per month and has continuously been in the employ of such company since September 10, 1943. At all times since they removed to Montana in December 1942 the child Ronald has resided in respondents' home and been maintained and cared for by them.

Upon removing to Seattle, Washington, in the year 1943, the relatrix was first employed as a photo finisher in a penny arcade, next she worked in the shipyards during the war and when the shipyards closed down she returned to the penny arcade as a photo finisher, which position she had held for over two years prior to the trial, receiving therefor a salary of $50 per week. Notwithstanding that she has been continuously employed and earning money, relatrix has never contributed any sum or amount toward the support, care or maintenance of her child since leaving him with respondents in Havre in January 1943.

Ross R. Veach, Jr., made the child Ronald a beneficiary under his government insurance policy from which source is paid the sum of $30 per month toward the maintenance of the child, which payments are to continue until January 8, 1959. In July 1946 relatrix first learned that the child had been made such beneficiary and a year later (July 1947) she came to Great Falls,

Montana, demanded that respondents deliver the child to her and upon their refusal she instituted these proceedings.

At the trial relatrix explained that her child was temporarily taken from her custody by the North Dakota court upon the complaint of her mother, a divorced woman in whose home relatrix did then and does now reside and who had and has minor children of her own. Relatrix testified that at the time of making the complaint her mother was in poor health and desired relatrix to leave her regular employment and remain at home and that upon the refusal of relatrix to comply with such request her mother complained to the court of the neglect by relatrix of her infant. A copy of the North Dakota court's order restoring the custody of the infant to relatrix was received in evidence indicating that such court at a later date had impliedly found relatrix a proper person to again have such custody.

Upon removing to Seattle the mother of relatrix occupied a three-room apartment where she lived with her four daughters, including relatrix but which apartment was not large enough to also accommodate relatrix' son. In January 1947 the mother of relatrix moved into a five-room house located in a good residential section of the city where she now resides with relatrix and her other daughters.

There is practically no material conflict in the evidence except on the question as to whether relatrix had abandoned the child since leaving it at Havre with respondents on January 25, 1943.

Relatrix testified: That after she had removed to Seattle she wrote respondents about once every two months but that she received no answer to her letters; that return addresses were on her letters to respondents but that the letters were never returned to her; that she made inquiries of the Red Cross and the Social Service as to respondents' whereabouts but had been unable to obtain any information from such sources; that she first learned of respondents' removal to Great Falls, Montana, in a letter from an aunt written in December 1946; that there-

after relatrix took no action whatever until July 1947 when she and her sister came to Great Falls and there instituted these proceedings.

On the other hand the respondents testified that when they removed from Havre to Great Falls they left forwarding addresses; that they had experienced no difficulty in receiving mail addressed to them and that they at no time had received any letter or other communication from relatrix.

"Cases of this character tear at the heart strings of all normal human beings and are recognized as perhaps the most difficult and baffling to the courts of all the matters with which they have to deal. Because of the inherent sentimentality of the human heart, courts, necessarily composed of men endowed with ordinary attributes, have found it imperative to brace and steel themselves against these almost overpowering influences, where a mother's love for her baby is involved, and, at every stage of the proceeding, keep an eye single to the best interests of the child, always realizing, of course, that at best it is only problematical, being entirely infuturo. It is a known fact, incapable of disputation, that not infrequently from most unpromising environments and surroundings have emerged men and women of great worth and accomplishments, leaders in church and state far outrivaling many of their more favored compeers brought up in so-called best homes and environments. To have been born poor, to have known what it is to want, to have been forced, from sheer necessity, to struggle and fight for existence, to have learned frugality and industry in the 'school of hard knocks' and to have had, with all, the love of mother—these have, perhaps, been the most potent elements comprising the fulcrum in the lives of countless numbers of successful men and women composing the backbone of this great country; hence, to determine in each particular case what is for the best interests of a little child is a most trying and dubious question." Ellison v. Platts, 226 Iowa 1211, 286 N. W. 413, 414.

While section 5837, Revised Codes of Montana 1935, gives

█ █ relatrix the right to the custody of the minor child, yet the right is not absolute, for in proceedings such as this the paramount and controlling question by which the court must be guided is the welfare of the child. Ex parte Bourquin, 88 Mont. 118, 122, 290 Pac. 250.

A mother may forfeit her right to the custody and control of █ her child by her treatment or abandonment of it or by failing to support it. "The humanitarian consideration of the child's welfare is paramount to the right of the natural parent." 7 Am. Jur., p. 669, sec. 62.

An order denying a writ of habeas corpus is appealable under █ our statute. Ex parte Reinhardt, 88 Mont. 282, 292 Pac. 582; In re Thompson, 77 Mont. 466, 251 Pac. 163. "But the determination of the facts is ordinarily for the court to which the application for the writ is made in the first instance and the appellate court will interpose and substitute other conclusions of fact only where an abuse of the discretion so vested in the trial court clearly appears." Note in Ann. Cas. 1912D at p. 362, citing a number of cases. See also, In re Thompson, supra, and Jewett v. Jewett, 73 Mont. 591, 237 Pac. 702.

There was no request made for findings of fact herein and the █ trial court made no express findings as to the fitness of relatrix or as to her facilities to care for the child nor upon the question of her abandonment of the child in January 1943, but in such cases the presumption is that the trial court found all the facts necessary to support its order and judgment. Baker v. Pennsylvania Fire Ins. Co., 81 Mont. 271, 263 Pac. 93; State ex rel. Case v. Bolles, 74 Mont. 54, 238 Pac. 586; Whitcomb v. Koechel, 117 Mont. 329, 158 Pac. (2d) 496, citing a long list of Montana cases. See also Walton v. Coffman, Utah, 169 Pac. (2d) 97, a habeas corpus proceeding.

In the absence of a showing that, in awarding the custody of █ of an infant child, the trial court abused the sound judicial discretion reposed in it, its judgment will not be disturbed on appeal.

In Knochemus v. King, 193 Iowa 1282, 188 N. W. 957, 959, it is said:

"All courts recognize that the legal dominion which the law gives to the natural parent has well defined limitations. It is a dominion in the nature of a trust, in which the child is the beneficiary. When the parent fails to perform the duties and obligations which that trust imposes, it may be said that the parent forfeits the legal dominion over the child. The paramount consideration, after all, is what is best for the child, and it is the duty of a court to leave the child where its interests, welfare, and happiness will be best subserved. * * *

"The facts justify the conclusion that the boy should remain where he now is. It would not only be embarrassing to the boy, but to the mother, to effect a change at this time."

Again in Ellison v. Platts, supra, the court said:

"In matters of this kind, the well settled rule in this state is that the paramount consideration is the best interests of the child. This is so fundamental that no citation of authorities is necessary, but see McDonald v. Stitt, 118 Iowa 199, 91 N. W. 1031; Hadley v. Forrest, 112 Iowa 125, 83 N. W. 822, and Knochemus v. King, 193 Iowa 1282, 1285, 188 N. W. 957. Many other cases might be cited to the same effect.

" 'Moreover, it is a case where so much depends upon the appearance and demeanor of the parties and the witnesses, so much upon the discretion of the trial court, and so much upon the welfare of the child as disclosed by his appearance and affections, that we are not justified ordinarily in disturbing the finding of the trial court.' Smidt v. Benenga, 140 Iowa 399, 118 N. W. 439, 441.''

See also Barry v. Reeves, 203 Iowa 1345, 214 N. W. 519; Armstrong v. Armstrong, Iowa, 192 N. W. 146; Rust v. Trapp, Iowa, 201 N. W. 565; Jensen v. Sorenson, 211 Iowa 354, 233 N. W. 717; State ex rel. Bize v. Young, 121 Neb. 619, 237 N. W. 677.

The trial court was confronted with the conflicting evidence and the demeanor of the parties on the witness stand. There is ample evidence in the record to support that court's order

and judgment and, since an abuse of discretion does not appear, the trial court's order and judgment is affirmed, remittitur to issue forthwith.

Associate Justices Choate, Gibson and Angstman, concur.

MR. JUSTICE METCALF (dissenting):

There is no contention in this case that Ross R. Veach, Jr., was the father of Ronald Medhaug Veach. Then his parents Ross R. Veach, Sr. and Una Veach, the defendants herein, are strangers to the blood of the infant child. The question then is: What is the right of the mother of an illegitimate child to its custody as against strangers? The law provides: "The mother of an illegitimate unmarried minor is entitled to its custody, services and earnings." Section 5837, Revised Codes of Montana, 1935. This is the general rule elsewhere. See annotation 51 A. L. R. 1507.

But the rule is not inflexible that the mother has the right to the custody of her illegitimate child. Where she is so clearly unfit to care for the child that the welfare of the child imperatively demands that the child be cared for elsewhere (Fowler v. Bright, D. C., 4 F. Supp. 565) or where she abandons the child and fails to support it or consents to its adoption by strangers, she may forfeit her right to its custody. 51 A. L. R. 1510, 1515.

In the instant case there was no evidence that the relatrix was not a fit and proper person to care for the child so that it must be presumed that the mother's character and conduct is such as to entitle her to the child's custody. Likewise it is conceded that both the relatrix and the defendants can maintain a home for the child, are able to support it and give it ordinary advantages.

The case then resolves itself into a determination as to whether there was sufficient evidence of abandonment of the child to cause the mother to forfeit her prima facie right to its custody.

The relatrix and Ross R. Veach, Jr. were living together as

husband and wife in Minot, North Dakota. They were caring for the child. Then Ross R. Veach was called into the service of his country. He was inducted into the army approximately a year after he married. It was agreed that the relatrix was to stay with the defendants, that they were to care for the child and that the relatrix was to work. When the war was over and the couple could resume their normal life together the agreement was that they were to get the child back. Ross R. Veach, Jr. secured an allotment from the government for the care of relatrix' child and this money was sent to the defendants. Evidently the relatrix' and the defendants' life together was not harmonious. At any rate she left Havre without telling the defendants where she was going. But there was nothing to indicate that she intended to change the agreement under which the child was left with the defendants or to abandon her child. When her husband returned after the war was over she presumably still intended to renew their marital relationship and together they would rear Ronald. The relatrix testified that she continued to correspond with her husband; she continued to draw her allotment as Ross' wife and the government continued to send to the defendants the allotment for Ronald. The relatrix was working in Seattle when she learned that her husband had been killed. She then had no place where she and Ronald could live. Nor in all probability could she easily find such a place. We are cognizant of the housing shortage and are aware of the difficulties encountered by a mother trying to find lodging for herself and a young child. Certainly the fact that she did not immediately demand custody of the child is not in itself evidence of an intention to abandon the child.

Unquestionably the paramount consideration in awarding the custody of a child is what will best advance the child's welfare and happiness. Section 5878, Rev. Codes 1935; Haynes v. Fillner, 106 Mont. 59, 75 Pac. (2d) 802. But presumptively the best interests of an illegitimate child require that its custody be awarded to the mother. Section 5837, Rev. Codes 1935; Haynes v. Fillner, supra. It is also true that the trial judge has large

discretion in awarding the custody of a minor child but that discretion must be exercised in favor of the party having the legal right if the evidence justifies it. Kilgore v. Tiller, 194 Ga. 527, 22 S. E. (2d) 150. So that to overcome the presumption established by statute that the best interests of the child are best subserved by placing it in the custody of its parents the trial judge must find an abandonment or that the mother is not a fit person. Binion v. Mathis, Tex. Civ. App., 171 S. W. (2d) 512; Ex parte Malley, 131 N. J. Eq. 404, 25 A. (2d) 630; Commonwealth ex rel. Self v. Self, 153 Pa. Super. 443, 34 A. (2d) 263. Where the mother is presumptively entitled to the custody of the child we cannot resort to the doctrine of implied findings to sustain a ruling against the mother's rights.

None of the cases cited by the majority go so far.

In Ellison v. Platts, 226 Iowa 1211, 286 N. W. 413, the court reviewed a record of a trial lasting four days and sustained a finding that the mother was "not capable of giving the said child a proper care, or comfort or home." In addition the court found that there was an oral agreement to surrender the child and a wilful abandonment. The court also said: "It must not be overlooked that the child is of the blood of the Defendants herein * * *." Certainly a different situation from the instant case where defendants are strangers to the blood.

In Knochemus v. King, 193 Iowa 1282, 188 N. W. 957, the boy whose custody was in controversy was 14 years old. The mother had voluntarily surrendered his custody, the foster parents had adopted the child and 14 years had elapsed. But even so the court said the determining factor was the wish of the boy to remain with his foster parents. The expressed wish of a child of an age to be able to exercise his powers of determination to stay with the foster parents was the decisive factor in awarding the custody in State ex rel. Bize v. Young, 121 Neb. 619, 237 N. W. 677, and in Barry v. Reeves, 203 Iowa 1345, 214 N. W. 519. In Armstrong v. Armstrong, Iowa, 192 N. W. 146, the finding with supporting evidence was that the father was not a fit person to have the custody of a five-year-old daughter.

The determinative point in Hadley v. Forrest, 112 Iowa 125, 83 N. W. 822, was also that the parent was not a fit and proper person. In Smidt v. Benenga, 140 Iowa 399, 118 N. W. 439, and McDonald v. Stitt, 118 Iowa 199, 91 N. W. 1031, the long period of unaccounted for abandonment was properly held to be an outright abandonment, but the period that elapsed (10 years in the first case and 11 years in the latter) was much greater than in the case at bar. The case of Rust v. Trapp, Iowa, 201 N. W. 565, was a controversy between divorced parents and is not in point.

The majority decision unwarrantedly deprives a mother of her right to her child. I therefore dissent.