STATE OF MONTANA, PLAINTIFF AND RESPONDENT v. F. C. BOOTH, DEFENDANT AND APPELLANT.

No. 9878.

328 Pac. (2d) 1104.

Submitted May 27, 1958. Decided Aug. 7, 1958.

Joseph P. Hennessey, Billings, for appellant.

Forrest H. Anderson, Atty. Gen., Joseph E. Buley, County Atty., Billings, for respondent Thomas J. Hanrahan, Helena, argued orally.

MR. CHIEF JUSTICE JUSTICE HARRISON:

The appellant, F. C. Booth, petitioned the district court for a writ of habeas corpus on August 13, 1957, alleging that his arrest was illegal; that the application for extradition did not show that he was guilty of any crime; and that the application for extradition was not made in good faith. The court issued an order for a writ of habeas corpus directed to Roy Stewart, sheriff of the County of Yellowstone, ordering him to have the body of the said F. C. Booth in the district court on the 6th day of September.

Return to the writ was made, on August 16, 1957, by the sheriff in which he certified that Booth was committed to his custody and detained by virtue of a warrant issued by the governor of the State of Montana; that the warrant was based on a requisition made upon him by the governor of the State of Oregon and a complaint charging the defendant with a felony filed in the justice court of Coos County, Oregon; and a warrant issued out of said court. Copies of the instruments were annexed to the return.

Exhibit C, attached to the sheriff's return, was a complaint made and filed in the justice court for Coos County, Oregon in which it was alleged: "F. C. Booth is accused by Willard

Friesen by this Information of the crime of Drawing Check with Insufficient Funds in Bank to Pay same in Full committed as follows:

"The said F. C. Booth on the 2nd day of May 1957, in the County of Coos, and State of Oregon, then and there being, did then and there unlawfully, wilfully, and feloniously, with intent to defraud, take, draw, utter and deliver to City Center Motel of North Bend, Oregon, a certain check for the payment of money upon the First National Bank of Portland, Main Branch, Portland, Oregon, which said check is, in words and figures, as follows: To-wit:

" 'To
" 'First National May 2, 1957
" 'Main Branch Portland
" 'Pay to the Order
 Of City Center Motel $50.00
 Fifty and..................................................................................Dollars
 " 's/s/ F. C. Booth'

he, the said defendant, then and there knowing at the time of said making, drawing, uttering and delivery of said check to the said City Center Motel, that he, the said defendant, did .not have sufficient funds in, or credit with, said bank for the payment of said check in full upon its presentation, contrary to the Statutes in such case made and provided and against the peace and dignity of the State of Oregon.

 "/s/ Willard Friesen
 "Private Prosecutor"

The information was verified by Willard Friesen and subscribed and sworn to before Thomes B. Swanton, Justice of the Peace, Coos County, Oregon.

. Swanton, the justice of the peace, issued a warrant for the arrest of F. C. Booth on May 20, 1957.

Hearing was had on the return day and on September 27, the court made and entered its order providing that the defendant was legally detained in custody by virtue of a valid warrant issued by the governor of the State of Oregon under

date of July 15, 1957, and by virtue of the warrant issued by the governor of the State of Montana on July 30, 1957, authorizing Charles M. Strawn, as agent of the governor of the State of Oregon, to apprehend and convey the petitioner to the State of Oregon to be there tried for the crime of drawing a check with insufficient funds in bank. It was further ordered that the petitioner, F. C. Booth, be remanded to the custody of the sheriff of Yellowstone County, Montana, for delivery to Charles M. Strawn, as agent of the Governor of Oregon.

A petition for rehearing was filed on October 2, 1957, on the grounds that the defendant, F. C. Booth, was entitled to discharge under section 94-101-15, R.C.M. 1947. This petition was denied on October 7, 1957; appeal was taken upon two specifications of error: (1) The court erred upon the hearing of the writ of habeas corpus in not granting the same and discharging the defendant from custody; (2) The court erred in denying the defendant's petition for rehearing and ruling that his right must be determined by appeal.

At the outset, no appeal lies from the order denying the ██ writ of habeas corpus in this case. The rule was first laid down in State ex rel. Jackson v. Kennie, 24 Mont. 45, 49-51, 60 Pac. 589, by Mr. Chief Justice Brantly, that an appeal does not lie from an order denying the writ of habeas corpus in a proceeding criminal in nature,—that is, where the issue to be determined is the freedom of the petitioner, or the legality of the petitioner's detention. The reason for the rule being that denial of habeas corpus is not *res adjudicata;* the writ of habeas corpus being an original writ—issuable out of either the district or supreme court. Thus, denial of the writ in district court does not divest this court of jurisdiction to grant a second application. In re Pyle, 72 Mont. 494, 496-497, 234 Pac. 254.

This court, however, *has held that an appeal lies* from an or- ██ der of the district court denying the writ of habeas corpus in a case involving the custody of a minor child. In re Thompson, 77 Mont. 466, 469, 251 Pac. 163; ex parte Rein-

240

hardt, 88 Mont. 282, 286, 287, 292 Pac. 582; State ex rel. Veach
v. Veach, 122 Mont. 47, 63, 195 Pac. (2d) 697.

The reason for allowing an appeal in that type of case is
said to devolve upon the essential nature of the proceedings
in the custody case. Thus, a custody case has been said to be
in the nature of a civil equitable suit; the petitioner to be in
the position of a plaintiff in the cause; and the order denying
the writ to be a judgment determining the merits of the con-
troversy from which a civil appeal lies. In re Thompson, supra.

Mr. Justice Angstman concisely stated the distinction be-
tween the two types of cases in Ex parte Reinhardt, supra,
wherein he said [88 Mont. 282, 292 Pac. 584]:

"Ordinarily, the doctrine of *res adjudicata* has no application
in habeas corpus proceedings. As was stated by Mr. Justice
Galen in the case of In re Pyle, 72 Mont. 494, 234 Pac. 254: 'A
decision on habeas corpus by one court does not constitute a
bar to another proceeding of the same character in another
court having jurisdiction, and the fact that justice of this
court has once issued a writ, returnable for hearing before a
district judge, does not, after decision by the district judge,
divest this court of jurisdiction to entertain a second applica-
tion, issue the writ, and make it returnable before another
district judge, or one of its members or before the court itself.
No appeal is permitted in habeas corpus cases, and successive
applications for the writ may be made until the judicial power
of the state has been exhausted.'

"But respondent, in reliance upon the case of In re Thomp-
son, 77 Mont. 466, 251 Pac. 163, contends that a different rule
obtains in a proceeding in habeas corpus having as its object
the determination of the right to the custody of a minor child.
Were this controversy between conflicting claimants to the
custody of a minor and had Judge Self awarded the custody
to one of the claimants, that case would be controlling and an
appeal would have been available and the doctrine of *res adjudi-
cata* would be applicable. 12 R.C.L. 1255. But the respondent
here is not contending that he had any right to the custody

of Hattie Reinhardt, either as a relative of the minor, as agent of the father as was the situation in the Thompson Case, or by virtue of the order of any court, or otherwise. The controversy here is not to determine which of two conflicting claimants is entitled to the custody of the child. In this proceeding the only proper subject of inquiry is whether the child is unlawfully restrained of her liberty by respondent. The question of awarding the custody of the minor is not here involved nor was it involved in the proceeding before Judge Self, for it is manifest that no order was made by Judge Self awarding the custody to Stokes or anyone else. It is plain that if that had been done, the order would have been presented here. In fact, had the petitioner here presented a case in which there was a contest between conflicting claimants over the custody of a minor, the writ never would have been issued from the supreme court. As was said by the court in Child Saving Institute v. Knobel, (Mo. App.) 29 S. W. (2d) 725: 'There are two kinds of writs of habeas corpus involving an infant. One is directed toward freeing the child from imprisonment and the other to exercise the powers of a court of general equity jurisdiction over the custody of the person of the infant.' Were this action one of the latter class, the district court would have original jurisdiction (section 11, art. 8, Mont. Const.), with the right [in the unsuccessful claimant] of appeal to the supreme court (section 3, art. 8 [id.])."

While no motion to dismiss has been made herein, this court has always considered itself to have the power, *sua sponte,* to dismiss an appeal where one does not properly lie. See, e.g., Gill v. Rafn, 133 Mont. 505, 326 Pac. (2d) 974.

However, since the cause is before the court and does raise certain issues in regard to habeas corpus proceedings, we deem it proper to consider and decide them herein.

Nothing said herein shall be deemed to alter or amend the rule that no appeal lies in a habeas corpus proceeding of this type.

There appear to be two questions presented:

(1) Was the plaintiff substantially charged with a crime committed against the State of Oregon? (2) Must the complaint, information, or indictment and warrant of arrest issued thereon, made in the demanding state, be made in a court of general jurisdiction of that state?

Under his first contention, appellant contends that since he paid the check in question to the City Center Motel, as shown by evidence taken at the hearing on the writ of habeas corpus, no crime was committed, and therefore there was no substantial charge of a crime. Collaterally under this first argument, appellant also contends that the petition for extradition made by the governor of Oregon was merely a bill collection excursion into the State of Montana, and since the money was paid, the defendant is no longer liable to the criminal jurisdiction of the State of Oregon.

The process of extradition is founded upon the Federal Constitution, art. IV, section 2, clause 2, that: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the Executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

The Congress of the United States implemented the constitutional provision by enacting U. S. Revised Statute, section 5278, now appearing in 18 U.S.C.A. sections 3182 and 3195.

The adoption of the Uniform Criminal Extradition Act by the states (42 jurisdictions now have the Act; Montana's Uniform Criminal Extradition Act is found in sections 94-501.1, et seq.) constituted a definite recognition of the duties imposed by the Constitution, and of the importance of mutual and reciprocal action of the state in carrying out the duty in all cases, wherever the proper procedural machinery has been set in motion.

Under Article IV, section 2, clause 2, it has been held that there are only two constitutional prerequisites to rendition, which are that the accused be charged with a crime, and that

he be a fugitive from the demanding state. Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544.

In the leading case of Commonwealth of Kentucky v. Dennison, 24 How. 66, 65 U. S. 66, 16 L. Ed. 717, it was held that the word "crime" in the Federal Constitution includes every act forbidden and made punishable by law of the demanding state; the word "crime" itself includes every offense from the highest to the lowest in the grade of offenses including misdemeanors.

The two constitutional prerequisites to extradition in Roberts v. Reilly, supra, have been carried into the Uniform Criminal Extradition Act, (sections 94-501.2, 94-501-3,) along with more formal requirements, which are substantially contained in section 94-501-3.

R.C.M. 1947, section 94-501-3, provides: "No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless [1] in writing alleging that the accused was present in the demanding state at the time of the commission of the alleged crime, and [2] that thereafter he fled from the state, [3] except in cases arising under section 94-501-6 [section 94-501-6, provides for the extradition of persons not present in the demanding state at the time of commission of the crime,], and [4] accompanied by a copy of an [a] indictment found or by [b] information supported by affidavit in the state having jurisdiction of the crime, or by a [c] copy of an affidavit made before a magistrate there, together with a [d] copy of any warrant which was issued thereon; or [5] by a copy of a [a] judgment of conviction or [b] of a sentence imposed in execution thereof, [6] together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. [7] The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and [8] the copy of indictment, information, affidavit,

judgment of conviction or sentence must be authenticated by the executive authority making the demand.''

It has been held that if the demand for extradition to the governor of the asylum state is not in proper form required by the Uniform Act, the alleged fugitive will be discharged. Section 94-501-3; Russell v. State, 251 Ala. 268, 37 So. (2d) 233; Stobie v. Barger, 129 Colo. 222, 268 Pac. (2d) 409; Schriver v. Tucker, Fla. 1949, 42 So. (2d) 707, 709; Ex parte Fritz, 137 N. J. Eq. 185, 44 A. (2d) 414, 416; Videan v. State, 68 Idaho 269, 194 Pac. (2d) 615, 617.

The question of whether the rendition, warrant, affidavit, ▆ etc., are in proper form are questions to be considered by the law of the asylum state. Videan v. State, supra; 35 C.J.S. Extradition, section 14 b., p. 335.

It has been thoroughly established that the warrant of arrest ▆ is *prima facie* evidence that the relator in habeas corpus proceedings is properly charged with a crime, and the burden of proof is upon him to overcome the presumption. People ex rel. Albert v. Commissioner of Correction, Sup., 111 N.Y.S. (2d) 307, 309; Gluff v. Rouls, 228 Ind. 186, 188, 91 N.E. (2d) 176; Annotation 81 A.L.R. 552, 563; 40 A.L.R. (2d) 1151, 1158. 22 Am. Jur., Extradition, section 27, p. 267.

Both under the act and the Federal Constitution the charge ▆ of crime made in the demanding state need not be technically correct; a substantial charge of crime in the required papers submitted by the demanding state is a sufficient basis for extradition. Section 94-501-3; Annotation 81 A.L.R. 552, 556; 40 A.L.R. (2d) 1151, 1159; 22 Am. Jur., Extradition, section 38, p. 275; 35 C.J.S. Extradition, section 14, p. 336.

It has been almost universally held that a charge of crime substantially in the language of the statute which prohibited its commission and prescribed the punishment therefor is sufficient. Pierce v. Creecy, 210 U. S. 387, 28 S. Ct. 714, 52 L. Ed. 1113; Ex parte Katcher, 39 Cal. (2d) 30, 243 Pac. (2d) 785; People ex rel. Mack v. Meyering, 355 Ill. 456, 189 N. E. 494; Commonwealth v. Hays, Ky. 1954, 267 S.W. (2d) 931;

People ex rel. Matochik v. Baker, 306 N. Y. 32, 114 N. E. (2d) 194; Ex parte Paulson, 168 Or. 457, 124 Pac. (2d) 297; Commonwealth ex rel. Katz v. Philadelphia Prison Superintendent, 162 Pa. Super. 459, 58 A. (2d) 366; Ex parte Dubois, 156 Tex. Cr. R. 463, 243 S. W. (2d) 698; 81 A.L.R. 552, 572; 40 A.L.R. (2d) 1151, 1162.

In the instant case a charge is drawn in almost the identical language of the statute, (section 165.225, Oregon Rev. Statutes) which reads as follows:

"*Drawing check on insufficient funds; when intent to defraud presumed.* (1) Any person who, for himself or his agent or representative of another, or as an officer, agent or employee of a corporation, and on behalf thereof, wilfully and with intent to defraud, makes, draws, utter or delivers any check, draft or order upon any bank or other depository for the payment of money, knowing at the time of the making, drawing, uttering or delivering that the maker or drawer, or his principal or the corporation, has not sufficient funds in or credit with said bank or other depository for the payment of the check, draft or order in full upon its presentation, although no express representation is made that there are sufficient funds in or credit with such bank or other depository for its payment in full upon presentation, shall be punished upon conviction as follows:

 ✻ ✻ ✻ ✻ ✻ ✻ ✻ ✻

"(2) As against the person making, drawing, uttering or delivering a check, draft or order, payment of which is refused by the drawee because of the maker or drawer, or his principal or the corporation has insufficient funds in, or credit with, such drawee, such refusal by the drawee is *prima facie* evidence of the intent of the person making, drawing, uttering or delivering such check, draft or order, to defraud, and of his knowledge of the insufficiency of funds in, or credit with, such bank or other depository."

Comparing the information with the pertinent sections of the Oregon code there can be no doubt that the charge of crime

made against the appellant in the State of Oregon is substantially in the language of the statute.

We, in accord with the general rule stated above, will not ■ examine the information for technical defects since there must be only a substantial charge of a crime.

However, in contending that he was not accused of a crime or charged with a crime, the petitioner alleges that by showing upon the trial that he paid the amount of the check after the request for rendition to Oregon was made, he can no longer be charged with a crime.

As a general rule, it is no defense that accused made, offered to ■ make, or intended to make restitution to the complainant on the theory that in a criminal case the injury is to the state as well as to the complainant. Under a number of worthless check statutes, the crime is complete, if it has been committed at all, when the making or delivery of the check takes place, and it is immaterial whether payment or restitution is subsequently made. People v. Zimmer, 23 Cal. App. (2d) 581, 73 Pac. (2d) 923; Haines v. State, 135 Neb. 433, 281 N. W. 860; Cook v. Commonwealth, 178 Va. 251, 16 S. E. (2d) 635; State v. Carr, 160 Wash. 83, 294 Pac. 1016.

Likewise it is the general rule, from which there seems no ■ dissent, that proof of an alibi, or absence from the scene of the crime at the time of its commission—assuming that such proof does not negative the presence of the prisoner within the demanding state—will not warrant the discharge of the person sought to be extradited. *In fact, such proof will not even be received by the courts; the usual way of stating the rule being that habeas corpus is not the proper proceeding to try the question of alibi or any question as to the guilt or innocence of the accused.* Edmunds v. Griffin, 177 Iowa 389, 156. N. W. 353; People ex rel. Corkran v. Hyatt, 172 N. Y. 176, 64 N. E. 825, 60 L.R.A. 774, affirmed 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657; Commonwealth ex rel. Matulek v. Abbott, 4 Pa. Dist. & Co. R. 16; Hayes v. Palmer, 21 App.

D. C. 450; Ex parte Shoemaker, 25 Cal. App. 551, 144 Pac. 985; R.C.M. 1947, section 94-501-3; 51 A.L.R. at page 811.

Appellant makes the further contention that the charge of crime was made, and extradition proceedings were instituted by the State of Oregon merely for the purpose of satisfying a private debt. However, the general rule is to the effect that where a warrant of extradition is sought for some ulterior purpose as, for instance, for the purpose of collecting private debts or gratifying personal malice, it is within the discretionary power of the governor of the state to refuse to issue it. However, the motives which induced a governor to grant, honor or refuse a requisition will not be inquired into on habeas corpus, since such inquiry would be opposed to principles of public policy and to the freedom of action by the executive within its constitutional authority. 94 A.L.R. 1496; 22 Am. Jur., Extradition, section 15, p. 254.

It is also generally held that on a hearing of a habeas corpus sued out for the liberation of one who is sought to be extradited for the violation of the criminal laws of another state, upon a warrant of the governor issued upon a requisition of a demanding state, it is not admissible to hear evidence upon, or to inquire into, the motives or purpose of the prosecution. Chase v. State, 93 Fla. 963, 113 So. 103, 54 A.L.R. 271; Barrnager v. Baum, 103 Ga. 465, 30 S. E. 524; Commonwealth ex rel. Dunn v. Ruch, 380 Pa. 152, 110 A. (2d) 240; Ex parte Beam, 96 Okl. Cr. 207, 252 Pac. (2d) 179; 94 A.L.R. 1496, 1497.

Thus, in Ex parte Beam, supra, (a case in which the petitioner contended that extradition proceedings, instituted by the State of Kansas to prosecute him for uttering a false and bogus check, were made in bad faith and for the sole purpose of trying to collect a debt) the court, in quoting from Ex parte Scott, 91 Okl. Cr. 345, 219 Pac. (2d) 249, said:

" 'Under provisions of the Uniform Criminal Extradition Act, House Bill No. 37, approved by Governor on March 25, 1949, 22 O.S.Supp. section 1141.1, et seq., the courts of Okla-

homa may not inquire into the guilt or innocence of persons seeking release from custody under extradition warrant or make any inquiry into the motives or purposes of the prosecution'.'' [96 Okl. Cr. 207, 252 Pac. (2d) 180.]

The rule is clearly applicable here.

The further contention of the appellant is to the effect that the indictment, or information made upon affidavit in the demanding state, upon which a warrant for the arrest of the prisoner is issued, must be filed in a court of general jurisdiction.

However, our statute (section 94-501-3) merely requires that the information be accompanied by an affidavit made before a magistrate in the demanding state, together with a copy of any warrant which was issued thereon.

Under Oregon law (sections 133.010, 133.020, 133.030, 133.040, 133.050 and 133.110, Oregon Revised Statutes), an information is the allegation or statement made before a magistrate and verified by the oath of the party making it that a person has been guilty of some designated crime; a magistrate is an officer having power to issue a warrant for the arrest of a person charged with the commission of a crime; county judges and justices of the peace are magistrates; when complaint is made to a magistrate of the commission of a crime, the magistrate shall examine the informant on oath, reduce his statement to writing, cause the same to be subscribed by him and take the depositions of any witnesses that he produces in support thereof; the name of every person who voluntarily appears before any justice of the peace or grand jury to prosecute a person in a criminal action, either for a misdemeanor or felony, shall be indorsed upon the complaint or information as private prosecutor; if the magistrate is satisfied that the crime complained of has been committed, and that there is probable cause to believe that the person charged has committed it, he shall issue a warrant of arrest.

It is quite apparent that a justice of the peace in Oregon is a magistrate with authority to issue a warrant

for the arrest of any person against whom a complaint is made for the commission of a crime. There is no requirement in the Uniform Extradition Act that the warrant be sued out by a judge of a court of general jurisdiction. The only requirement made is that it be issued by a magistrate of the demanding state, and that if the request for extradition is made upon affidavit, it be made before a magistrate there. All requirements imposed by the Act were fully complied with in this case.

Finding no defects in the order of the district court denying appellant his petition for writ of habeas corpus, the order is affirmed.

MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICES BOTTOMLY and ADAIR, specially concurring:

We agree that the purported appeal be dismissed. However, we desire to add that we find no constitutional or statutory authority permitting the taking of an appeal from an adverse ruling or order on an application for a writ of habeas corpus. For this reason the purported appeal herein should be dismissed for lack of jurisdiction in this court to entertain same or to pass on the merits of the proceedings. The petitioned Booth was at liberty to petition any other district court or judge of this state for a writ of habeas corpus and after the denial of the writ, he had a right to institute in this court an original proceeding asking for a writ of review or for a writ of habeas corpus.